# In the United States Court of Federal Claims

No. 11-492 C
Filed: December 30, 2016

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MERIDIAN ENGINEERING COMPANY, | 41 U.S.C. §§ 601–613 (2006); |
| | 41 U.S.C. §§ 7101–7109 (2011) |
| Plaintiff, | (Contract Disputes Act); |
| | 48 C.F.R. 31.105, 31.202, 31.203, |
| v. | 52.242-14, 52.243-4; |
| | Breach of Contract; |
| THE UNITED STATES, | Equitable Adjustment; |
| | Federal Rule of Evidence 702, 703 |
| Defendant. | (Experts); |
| | Federal Rule of Evidence 802 |
| | (Hearsay); |
| | Show Cause Order. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Michael H. Payne**, Cohen Seglias Pallas Greenhall & Furman PC, Philadelphia, PA, Counsel for Plaintiff.

**Eric E. Laufgraben**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## POST TRIAL MEMORANDUM OPINION AND FINAL ORDER ON EQUITABLE ADJUSTMENT

**BRADEN**, *Judge*.

This post trial decision resolves the equitable adjustment that Meridian Engineering Company ("Meridian") is due for costs that it incurred when the Government suspended performance of a September 21, 2007 contract and for work that Meridian completed after the suspension was lifted. To facilitate review of this Post Trial Memorandum Opinion And Final Order, the court has provided the following outline:

**I.  Relevant Background.**

**II.  Discussion.**

    **A.  Jurisdiction.**

    **B.  Standing.**

    **C.  Whether The Government Breached The September 21, 2007 Contract.**

        **1.  Counts 7, 8 And 9 Of The May 19, 2014 Second Amended Complaint.**

      2.    The Government's Argument.

      3.    Meridian's Response.

      4.    The Government's Reply.

      5.    The Court's Resolution.

  D.    The Measure Of Equitable Adjustment That Meridian Is Entitled To Receive.

      1.    Fact Witnesses.

          a.   Ted Haworth, Former President Of Meridian.

          b.   Mark Sutton, Current President And Former Executive Vice-President Of Meridian.

      2.    Expert Testimony On Equitable Adjustment.

          a.   Meridian's Expert In Construction Cost Accounting: Timothy Van Noy, C.P.A., C.F.E.

          b.   The Government's Expert In Federal Government Contract Accounting: Sam Hadley, C.P.A., C.F.E., C.F.M.

      3.    The Court's Resolution.

          a.   The Relevant Legal Standard.

          b.   "Claim Elements" Alleged In Counts 7, 8 And 9 Of The May 19, 2014 Second Amended Complaint.

             i.    Regarding Meridian's Small Tools Costs.

            ii.   Regarding Meridian's Payroll Burden Costs.

           iii.   Regarding Meridian's Field Support Overhead Costs.

            iv.   Regarding Home Office Overhead Costs.

            v.    Regarding Meridian's Use Of The USACE Manual.

            vi.   Regarding The Water Diversion System.

           vii.   Regarding Standby Equipment Costs.

          viii.   Regarding The Amount Of Time That Meridian Took To Perform The Backfill And Interim Protection Work Orders.

          c.   The Total Equitable Adjustment That Meridian Is Due For Count 7, 8 And 9 Of The May 19, 2014 Second Amended Complaint.

          d.   Under The September 21, 2007 Contract And The Contract Disputes Act, Meridian Also Is Entitled To Recover Interest On The Equitable Adjustment That It Is Due.

**III.  CONCLUSION.**

* * *

## I.    RELEVANT BACKGROUND.[1]

Meridian is an engineering and construction firm located in Tucson, Arizona, that specializes in heavy civil, structural, and industrial construction.  PX 1000-5.  On September 21, 2007, the Army Corps of Engineers ("USACE") awarded Meridian a $5.8 million contract to complete a flood control project in Nogales, Arizona ("Chula Vista Project").  JX193–1.

After commencing work on the Chula Vista Project, Meridian encountered a series of problems.  On July 29, 2011, due to disagreements over how these issues should be resolved, Meridian filed a Complaint in the United States Court of Federal Claims alleging that the Government breached the September 21, 2007 Contract and seeking damages of $7.6 million.  Compl. at ¶ 324.  Subsequently, Meridian filed two amended complaints.  ECF Nos. 83, 108.  The Second Amended Complaint ("Sec. Am. Compl.") contained fourteen counts.  Sec. Am. Compl. at ¶¶ 31–387.

On January 27–30 and March 27–30, 2014, the court conducted a lability trial in this case.  On July 22, 2015, the court determined that USACE did not breach the September 21, 2007 Contract, as alleged in Counts 1–6 and 10–13 of the Second Amended Complaint.  *See Meridian Engineering Company v. United States*, 122 Fed. Cl. 381, 402–13, 15–22 (2015).  In addition, the court decided that the USACE did not violate the implied duty of good faith and fair dealing, as alleged in Count 14.  *Id*. at 426.  The court, however, reserved judgment on Counts 7, 8 and 9, that alleged the USACE owed Meridian payment for completed work.  *Id*. at 414.  With regard to these Counts, the Government was ordered to show cause why it did not breach the September 21, 2007 Contract, by failure to make timely payment for completed work.  *Id*.

On October 23, 2015, the Government filed a Response ("Gov't SC Br."), admitting that it owed Meridian payment for completed work, but arguing that Meridian could not recover damages under breach of contract theory, because the appropriate remedy is an equitable adjustment.  Gov't SC Br. at 1–14.  On December 7, 2015, Meridian filed a Response ("Pl. Resp."), arguing that the Government's October 23, 2015 Response to the Show Cause Order was hyper-technical and without merit.  Pl. Resp. at 1–23.  On February 29, 2016, the Government filed a Reply ("Gov't Reply").  Gov't Reply at 1–8.

On June 14, 2016, the parties filed a Joint Stipulation Of Fact ("Jt. Stip.").  Jt. Stip. at ¶¶ 1–12.  Therein, the Government "acknowledge[d] that Meridian is entitled to compensation for costs incurred in connection with Counts 7, 8 and 9." Jt. Stip. at ¶ 5.  The Government also stipulated that it did not challenge $964,355.73 of the $1,391,210.73 that Meridian claims.  Jt. Stip. at ¶ 10.

---

[1] The relevant facts cited herein were derived from:  trial exhibits admitted into evidence, (*i.e.*, JX1–190, PX1–394, DX1–612); the court's July 22, 2015 Liability Decision in this case, (*Meridian Engineering Company v. United States*, 122 Fed. Cl. 381 (2015)); and the parties' June 14, 2016 Joint Stipulation Of Fact, (Jt. Stip. at ¶¶ 1–12).

On June 16, 2016, the court held an evidentiary hearing on the quantum of damages that remained in dispute, *i.e.*, \$426,855.  6/16/2016 TR at 2436–671.  On June 24, 2016, the Government filed a Supplemental Brief.  ECF No. 144.  On June 28, 2016, Meridian filed a Responsive Supplemental Brief.  ECF No. 145.

Two issues remain for adjudication: (1) whether the Government breached the September 21, 2007 Contract by failing to compensate Meridian for temporarily suspending the Chula Vista Project and failing to make timely payments for backfill and interim protection work that Meridian completed; and (2) what quantum of damages Meridian is entitled to recover.

## II.   DISCUSSION.

### A.   Jurisdiction.

Under the Tucker Act, 28 U.S.C. § 1491, the United States Court of Federal Claims has jurisdiction to adjudicate "any claim by or against, or dispute with, a contractor arising under [the Contract Disputes Act ('CDA')]," 28 U.S.C. § 1491(a)(2), as long as that claim also satisfies the CDA's jurisdictional requirements, 41 U.S.C. §§ 605(a), 609(a).[2]

A claim arises under the CDA if it is based on a "contract . . . entered into by any executive agency for . . . the procurement of services [or] . . . the procurement of construction, alteration, repair or maintenance of real property[.]" 41 U.S.C. §§ 602(a)(2)–(3).  The claims alleged in the May 19, 2014 Second Amended Complaint are based on the September 21, 2007 Contract between the USACE, an executive agency, and Meridian for the procurement of construction work to complete a flood control project.  Sec. Am. Compl. at ¶ 12.  These claims thus arise under the CDA.

When a claim arises under the CDA, however, 41 U.S.C. § 605(a)[3] and 41 U.S.C. § 609(a)[4] also require that the "action . . . be based on the same claim previously presented to and denied by

---

[2] On January 4, 2011, Congress amended certain provisions of the CDA and recodified the Act at 41 U.S.C. §§ 7101–7109.  *See* Public Contracts Act of Jan. 4, 2011, Pub.L. No. 111–350, § 3, 124 Stat. 3677, 3816–26.  Although the Public Contracts Act repealed 41 U.S.C. §§ 601–613, any "rights and duties that matured, penalties that were incurred, and proceedings that were begun before the date of enactment of this Act" are still governed by these sections of the United States Code. Pub.L. No. 111–350, § 7(b), 124 Stat. at 3855.

[3] Section 605(a), in relevant part, provides: "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a).

[4] Section 609(a), in relevant part, provides:

[I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.

[a] contracting officer." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003). The Government argues that Meridian only presented the Contracting Officer with equitable adjustment claims and that, under sections 605(a) and 609(a), such claims are not "the same" as breach of contract claims. Gov't SC Br. at 7. Therefore, the May 19, 2014 Second Amended Complaint's breach of contract claims do not satisfy the CDA. Gov't SC Br. at 7 (citing *Reliance Insurance Co.*, 931 at 866 ("No claims that the Government breached the contract or its duty of good faith are properly before this court. [Plaintiff] only submitted to the contracting officer claims for equitable adjustment to the contract. [Plaintiff] did not submit to the contracting officer *a clear and unequivocal claim that the* [agency] breached the contract or its duty of good faith. Thus, [Plaintiff] did not satisfy 41 U.S.C. § 605(a) . . . [and] [c]onsequently, the Government has not waived its sovereign immunity with respect to any breach claims.") (emphasis added)).

Meridian, however, presented the USACE Contracting Officer with both equitable adjustment and breach of contract claims regarding the USACE's work suspension, backfill work, and the interim protection project orders. JX33-15. The CDA does not require "that a 'claim' must be submitted in any particular form or use any particular wording. All that is required is that the [plaintiff] submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987).

On April 2, 2010, Meridian submitted a consolidated Request for Equitable Adjustment ("REA") to the USACE. JX177–1. On May 20, 2010, the USACE acknowledged receipt of the REA and indicated that it planned to make a decision on the REA by November 30, 2010. JX189–1. But, no response was forthcoming. Meridian therefore converted the April 2, 2010 REA to a certified claim during the first week of January 2011. JX33. In addition, on January 7, 2011, Meridian sent Contracting Officer Julie Martinez a letter, requesting compensation for costs that Meridian incurred due to the USACE's defective management of the Chula Vista Project. JX33-1 ("[Meridian's] costs largely resulted from a defective design, defective specifications, and differing site conditions."). The letter provides a factual and legal summary of Meridian's claims, arguing that the USACE's defective management of the project "amount[ed] to a breach of contract." JX33–15. In addition, Meridian listed twelve USACE actions with the corresponding amount of compensation that Meridian claimed it was due. JX33-15–16. The list includes: "'Suspension of Work' in the amount of $873,693.24; . . . 'Channel Fill and Compaction' in the amount of $904,550.05; [and] . . . 'Interim Protection Plan' in the amount of $399,407.49." JX33-16.

Meridian's REAs, consolidated claims and January 7, 2011 letter provided the Contracting Officer with adequate notice that Meridian's suspension of work, backfill work and interim protection claims were based on both equitable adjustment and breach of contract theories. For this reason, the court has determined that it has jurisdiction to adjudicate the equitable adjustment and breach of contract claims alleged in Counts 7, 8 and 9 of the May 19, 2014 Second Amended Complaint.

---

41 U.S.C. § 609(a).

**B.     Standing.**

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5 (1992)). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan*, 504 U.S. at 560–61. Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, Inc., 528 U.S. 167, 180–81 (2000) (internal citations omitted).

The May 19, 2014 Second Amended Complaint alleges that Meridian suffered monetary injury that is concrete, particularized, and fairly traceable to the USAC's actions. Also, any financial injury established by Meridian can be redressed by a monetary award. For these reasons, the court has determined that Meridian has standing to seek adjudication of the claims in the May 19, 2014 Second Amended Complaint.

**C.     Whether The Government Breached The September 21, 2007 Contract.**

**1.     Counts 7, 8 And 9 Of The May 19, 2014 Second Amended Complaint.**

Count 7 of the May 19, 2014 Second Amended Complaint alleges that, on January 27, 2009, one year after the Chula Vista Project began, the USACE instructed Meridian to suspend work. Sec. Am. Compl. at ¶ 246. Despite these instructions, Meridian was directed to maintain a work force (Sec. Am. Compl. at ¶ 248) and equipment on standby (Sec. Am. Compl. at ¶ 250). The USACE issued Unilateral Modification No. R31 to compensate Meridian for costs incurred due to the suspension. ECF No. 105 at ¶ 256. Count 7, however, also alleges that the $476,630 to be paid under Modification No. R31 was not sufficient to compensate Meridian for the costs it incurred due to the suspension order. Sec. Am. Compl. at ¶ 258. And, in any case, Meridian never was paid the $476,630. Sec. Am. Compl. at ¶ 257.

Count 8 alleges that, on April 2, 2009, the USACE issued: (1) Unilateral Modification No. R23, directing Meridian to backfill portions of the excavation that Meridian completed ("backfill work"); and (2) Unilateral Modification No. R30, increasing the contract amount to compensate Meridian for the backfill work ordered under Unilateral Modification No. 23. Sec. Am. Compl. at ¶¶ 262–65. Count 8 also alleges that the $325,466 provided in Modification No. R30 was not sufficient to compensate Meridian for the actual costs incurred performing the backfill work. Sec. Am. Compl. at ¶ 266.

Count 9 alleges that, on April 22, 2009, the USACE issued Unilateral Modification No. R25, instructing Meridian to install grouted stone protection for completed portions of the Chula Vista Project ("interim protection work"). Sec. Am. Compl. at ¶ 273. The USACE increased the contract price by $1,141,225 to compensate Meridian for this "interim protection work," but this

amount was not sufficient to cover the actual costs Meridian incurred for this additional work. Sec. Am. Compl. at ¶¶ 273–80.

## 2.    The Government's Argument.

The Government does not dispute that it ordered Meridian to suspend work on the Chula Vista Project, backfill portions of the completed excavation, and perform interim protection work. Gov't SC Br. at 1.  Nor does the Government dispute that it owes Meridian some amount for those contract modifications.   Gov't SC Br. at 6.   The Government contends, however, that the September 21, 2007 Contract's "Suspension Clause"[5] and "Changes Clause"[6] anticipated the USACE's modifications and, therefore, the proper remedy is an equitable adjustment not breach of contract.  Gov't SC Br. at 5–7.  "[C]ontingencies contemplated by various contract clauses are remediable under those clauses of the contract, not as breach of contract."  Gov't SC Br. at 5 (quoting *Triax-Pacific v. Stone*, 958 F.2d 351, 354 (Fed. Cir. 1992).  The September 21, 2007 Contract's Suspension Clause and Changes Clause contemplate that contract modifications, such as those alleged in Counts 7, 8 and 9 of the May 19, 2014 Second Amended Complaint, may occur after contract award.  Gov't SC Br. at 5–6.  Therefore, the costs that Meridian incurred, because of the Government's instructions to suspend performance, backfill excavations, and perform interim protection work are remediable only through equitable adjustment of the September 21, 2007 Contract, not by breach of contract.  Gov't SC Br. at 7.

---

[5] The September 21, 2007 Contract's Suspension Clause incorporates Federal Acquisition Regulation ("FAR") 52.242-14(b).  The clause provides:

> If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly.

JX2-115 (quoting 48 C.F.R. 52.242-14(b)).

[6] The September 21, 2007 Contract's Changes Clause incorporates FAR 52.243-4(d).  The clause provides:

> If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing.

JX2-116 (quoting 48 C.F.R. 52.243-4(d)).

### 3.     Meridian's Response.

Meridian responds that the USACE breached the terms of the September 21, 2007 Contract by failing to: (1) make Meridian's requested equitable adjustments; and (2) pay Meridian the undisputed amounts due under Unilateral Modifications 25, 30, and 31.  Pl. Resp. at 14.

### 4.     The Government's Reply.

The Government replies that the refusal to pay the equitable adjustment, requested by Meridian, is consistent with the September 21, 2007 Contract that contains specific procedures for closing out the contract and determining final amounts due to Meridian.  Gov't Reply at 4 (citing JX2-94).  Meridian, however, declined to follow those procedures and, instead, filed a lawsuit in this court.  Gov't Reply at 4 (citing JX2-94).  Accordingly, the Government has a right to withhold final payment, *until the court determines* the amount of equitable adjustment that Meridian is due. Gov't Reply at 4.

The Government adds that failing to pay a disputed equitable adjustment is not a breach of contract under the CDA.  ECF No 138. at 5.  If failing to tender the amount of an equitable adjustment request constituted a breach of contract, every dispute could be analyzed as a matter of breach and there would be no need for a separate equitable adjustment inquiry.  Gov't Reply at 5. This is not how the United States Court of Appeals for the Federal Circuit has interpreted the CDA. Gov't Reply at 5.

### 5.     The Court's Resolution.

"[C]ontingencies contemplated by various contract clauses are remediable under those clauses of the contract, not as a breach of the contract."  *Triax-Pacific*, 958 F.2d at 354 (citing *Johnson & Sons Erectors Co. v. United States*, 231 Ct. Cl. 753, 759 (1982) (holding that a contract clause providing for equitable adjustments, converts a breach of contract claim into an equitable adjustment claim)).  In this case, the Suspension Clause of the September 21, 2007 Contract contemplates unreasonable delays, suspensions, and interruptions and provides for an "equitable adjustment" to compensate Meridian, in the event of such contingencies.  JX2-115.  Therefore, any cost that Meridian incurred due to the USACE's suspension order must be recovered under the Suspension Clause.

Similarly, the Changes Clause anticipated the possibility of increased costs due to "change orders" and provided that Meridian will be compensated for those costs by an "equitable adjustment" of the September 21, 2007 Contract.  JX2-115–16.  USACE issued two change orders: (1) Unilateral Modification No. R23, directing Meridian to backfill portions of the Chula Vista excavation, (JX138-1); and (2) Unilateral Modification No. R25, instructing Meridian to perform interim protection work, (JX140-1).  Pursuant to the Changes Clause of the September 21, 2007 Contract's, Meridian must recover any costs incurred, because of the backfill or interim protection change orders as equitable adjustments.

Meridian argues, without citing any contractual language or relevant case law, that the USACE breached the September 21, 2007 Contract by failing to make equitable adjustments and

pay Meridian any undisputed amount due under the Suspension and Changes Clause. Pl. Resp. at 14. As a matter of law, "[a] breach of contract claim requires . . . an obligation or duty arising out of the contract[.]" *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). Under the September 21, 2009 Contract, however, the USACE did not have a duty to pay Meridian for completed work, unless Meridian provided substantiation for the claimed payments, including "supporting data in a form and detail required by the Contracting Officer." JX2-93. Meridian did not provide all of the substantiation requested by the USACE Contracting Officer before filing the July 29, 2011 Complaint. DX572-2–7. For this reason, the USACE was not under a contractual obligation to pay Meridian for the amounts due under Unilateral Modifications 25, 30, and 31 prior to the commencement of this litigation.

In addition, after Meridian filed the July 29, 2011 Complaint, the USACE did not have the authority, let alone the contractual duty, to pay Meridian the undisputed amount. *See* 28 U.S.C § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested . . . is reserved to officers of the Department of Justice[.]"). Under 28 U.S.C. § 516, "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation." *Sharman Co. v. United States*, 2 F.3d 1564, 1571–72 (Fed. Cir. 1993); *see also PBI Elec. Corp. v. United States*, 17 Cl. Ct. 128, 138 (1989), ("Any amount due for work completed prior to the date of the claim clearly became part of such a claim on its filing. Thus, any payment on the work performed should have been authorized by the Attorney General.").

For these reasons, the court has determined that the Show Cause order was in error and Meridian is not entitled to recover breach of contract damages in connection with the USACE's suspension order, backfill work order or interim protection work order. But, under the Suspension Clause and Changes Clause, Meridian is entitled to an equitable adjustment of the September 21, 2007 Contract.

### D.   The Measure Of Equitable Adjustment That Meridian Is Entitled To Receive.

The Government does not dispute that Meridian is entitled to some measure of equitable adjustment  for: (1) the January 27, 2009 Suspension Order, temporarily suspending all contract work; (2) Unilateral Modification No. 25, instructing Meridian to perform interim protection on completed portions of the Chula Vista Project; and (3) Unilateral Modification No. 30, instructing Meridian to backfill specific excavations. Jt. Stip. at ¶ 5.

In addition, the parties have stipulated that Meridian has been paid $148,997.65 for costs incurred in connection with the January 27, 2009 Suspension Order. Jt. Stip. at ¶ 7a. But, Meridian contends that it is entitled to receive an additional $751,437.09, (Jt. Stip. at ¶ 7b), of which the Government disputes $335,391. (Jt. Stip. at ¶ 7c). Regarding the backfill work, the parties stipulate that Meridian has been paid $513,514. Jt. Stip. at ¶ 8a. Meridian, however, contends that it is entitled to receive an additional $101,083.31. Jt. Stip. at ¶ 8b. The Government disputes $28,104. Jt. Stip. at ¶ 8c. Finally, the parties have stipulated that Meridian has been paid $258,258.32 for costs incurred for interim protection work. Jt. Stip. at ¶ 9a. Meridian, however, contends that it is entitled to an additional $538,690.33, (Jt. Stip. at ¶ 9b), of which the Government disputes $63,380. (Jt. Stip. at ¶ 9c).

During the June 16, 2016 evidentiary hearing, Meridian called two fact witnesses. Moreover, both parties proffered an expert witness to advise the court about the amount the Government owes and should pay Meridian.  6/16/2016 TR at 2448, 2501, 57, 67.

        **1.**        **Fact Witnesses.**

        **a.**        **Ted Haworth, Former President Of Meridian.**

Mr. Ted Haworth was President of Meridian during the Chula Vista Project, and participated in the preparation of Meridian's claims against the USACE.  6/16/2016 TR at 2448–49.  Mr. Haworth testified that Joint Exhibit 71, a table summarizing the costs that Meridian incurred due to USACE's suspension order, was "calculated from the company's business records, which included time cards, invoices, salary [] input forms, subcontractor payments, [and] quality control reports[.]"  6/16/2016 TR at 2451.  Meridian maintained these records on an ongoing basis.  6/16/2016 TR at 2451.  Mr. Haworth also testified that Meridian prepared Joint Exhibits 72 and 73—financial summaries for costs attributable to backfill and interim protection work—using the same process and types of documents as Joint Exhibit 71.  6/16/2016 TR at 2452–54.

On cross-examination, Mr. Haworth acknowledged that, in her March 10, 2014 Narrative Testimony, the Government's expert, Ms. Sam Hadley, questioned whether Meridian's claims complied with FAR part 31.  6/16/2016 TR at 2459.  Ms. Hadley's testimony challenged Meridian's: equipment costs, (6/16/2016 TR at 2472); water diversion system costs, (6/16/2016 TR at 2474); small tools rate, (6/16/2016 TR at 2489); payroll burden rate, (6/16/2016 TR at 2489); and office overhead rates, (6/16/2016 TR 2491).  Mr. Haworth testified that Meridian did not revise any of the claims challenged by Ms. Hadley's testimony.  6/16/2016 TR at 2472, 74, 89–91.

In March 2014, Ms. Hadley also requested that Meridian provide additional documentation to support these challenged claims.  6/16/2016 TR at 2462.  But, Mr. Haworth testified that Meridian did not provide the Government with any new documentation, because Meridian previously produced to the Government all of the information requested by Ms. Hadley.  6/16/2016 TR at 2462.

        **b.**        **Mark Sutton, Current President Of Meridian.**

Mr. Mark Sutton is the current President of Meridian and, at the time that Meridian performed the Chula Vista Project, he served as Meridian's Executive Vice-President.  6/16/2016 TR at 2557.  Mr. Sutton testified that he was familiar with the water diversion system that Meridian was required to build under the September 21, 2007 Contract.  6/16/2016 TR at 2557.  Mr. Sutton explained that Meridian's claimed costs for the water diversion system included high labor costs, because Meridian built the system in-house.  6/16/2016 TR at 2558–59.

On cross-examination, Mr. Sutton testified that Meridian was required to construct the water diversion system, as part of the September 21, 2007 Contract.  6/16/2016 TR at 2559.  Therefore, the cost of the system was included in Meridian's bid price.  6/16/2016 TR at 2559.  Because of unforeseen conditions, however, Meridian was forced to modify the system.  And, $437,202.52 of those modifications, including labor, was not included in the bid price.  6/16/2016 TR at 2559; *see also* PX 1000-26, 28, 30.

2.      **Expert Testimony On Equitable Adjustment.**

a.      **Meridian's Expert In Construction Cost Accounting: Timothy Van Noy, C.P.A., C.F.E.[7]**

Mr. Van Noy testified that he performed a forensic verification of Meridian's claimed costs.  PX 1000-2.  According to Mr. Van Noy, forensic accounting is defined as "[t]he use of accounting skills to investigate fraud or embezzlement and to analyze financial information for use in legal proceedings."  PX 1000-1.  Forensic accounting "involve[s] applying accounting techniques, such as auditing, financial analysis, and quantitative analysis[,] as well as investigative techniques to litigant claims and the related supporting documents."  PX 1000–1–2.  The conclusions of a forensic accountant are subject to inspection by the litigants and the court.  PX 1000-2.

A forensic verification, however, is not an audit.  PX 1000-2.  An audit examines the entirety of a company's operations to evaluate the fairness of the amounts presented in a financial statement.  PX 1000-2.  An auditor, tests internal control systems and individual account balances to confirm that a company: accurately stated its account balances; properly recorded its transactions; and only claimed costs for transactions that the company incurred during the relevant period and management authorized.  PX 1000-2.  Audits generally are distributed to third parties that do not have the opportunity to challenge the findings.  PX 1000-2.

Mr. Van Noy's forensic verification relied on records that Meridian kept in the normal course of business to evaluate whether Meridian's claims were reasonably supported by the underlying documents and calculations. PX 1000-3.  Mr. Van Noy defined "reasonably supported" to include:

- a cost amount that is consistent with an accounting system report prepared in the normal course of business;

- a cost amount that is consistent with a third-party document, *e.g.*, vendor invoice;

- a calculation that is mathematically accurate;

---

[7] Meridian proffered Mr. Van Noy as an expert in construction cost accounting.  6/16/2016 TR at 2501.  Mr. Van Noy is a Director at the accounting and consulting firm of EisnerAmper, LLP.  PX 1000-1.  He is a Certified Public Accountant, a Certified Fraud Examiner and certified in financial forensics.  PX 1000-1.  In 1985, Mr. Van Noy received a Bachelor of Science in Business Administration from Old Dominion University.  PX 1000-1.  Since that time, Mr. Van Noy has acquired over twenty-five years of experience in public accounting, specializing in construction litigation consulting and fraud investigation.  PX 1000-1.  He has been qualified as an expert in at least five trials.  6/16/2016 TR at 2501.  The Government did not object to Mr. Van Noy's qualifications.  6/16/2016 TR at 2502.  Accordingly, the court has determined that Mr. Van Noy is an expert in his respective field and qualified to testify as such.  *See* Fed. R. Evid. 702.

- an estimate, although not specifically supported by a document, that appears reasonable in the circumstance presented, *e.g.*, one hour estimated for a worker to obtain a hepatitis shot;

- an estimate, although not specifically supported, that is minor in relation to the claim; or

- a cost that is consistent with a third-party reference document, *e.g.*, the USACE Construction Equipment Ownership and Operating Expense Schedule (the "Corps Equipment Manual").

PX 1000-3. Mr. Van Noy's forensic verification did not assess the theories, methodologies or approaches used to develop Meridian's claims. PX 1000-4.

Based on Mr. Van Noy's forensic verification, he advised the court that the costs alleged in Counts 7, 8 and 9 include (1) "direct costs," (2) "allocations," and (3) "markups." PX 1000 7–12. Meridian's "direct costs" include labor, material, equipment, and subcontractor costs. PX 1000-11. Mr. Van Noy verified Meridian's direct labor and equipment costs against Meridian's Job Cost Detail reports and time cards. PX 1000-11. Direct material costs were verified, by ensuring that they agreed with Job Cost Detail reports and copies of vendor invoices. PX 1000-11. The subcontractor costs were checked against the Job Cost Detail reports and subcontractor invoices. PX 1000-11–12.

"Allocations" include small tools and labor burden costs. PX 1000-7–10. Meridian calculated its small tools allocation by multiplying the amount of labor hours associated with Count 7, 8 and 9 by a rate of $2.54. PX 1000-7. Mr. Van Noy testified that he verified the calculations used to determine the $2.54 small tools rate and ensured that the components of the calculation agreed with Meridian's accounting system reports. PX 1000-7. With regard to the labor burden, Meridian charged 401K benefits, vacation costs, and health, general liability, umbrella and installation floater insurances indirectly to the project by incorporating these costs into the labor burden rate. PX 1000-7–8. Mr. Van Noy verified the labor burden calculations and ensured that the components agreed with the Meridian's accounting system reports. PX 1000-9.

Meridian's "markups" include field support, home office overhead and profit. PX 1000-9–11. Meridian applied a 4.1 percent field support markup to the total direct costs alleged in the July 29, 2011 Complaint. PX 1000-9. This markup compensated Meridian for such indirect support costs as expenses associated with "superintendents, procurement, training and support personnel vehicles." PX 1000-9. Therefore, some of the costs covered by the field support rate also were included in the home office overhead rate. PX 1000-9.

Meridian accepted Mr. Van Noy's finding and adjusted the field support rate to 3.93 percent. PX 1000-9. With regard to the home office overhead rate, Meridian applied an 8.96 percent markup. Mr. Van Noy found that some of the components included in the home office overhead rate did not agree with Meridian's accounting system reports. PX 1000-9. Therefore, Meridian adjusted its home office overhead rate to conform to Mr. Van Noy's conclusion, but it did not have a discernible effect on the overall rate. PX 1000-10. Finally, Meridian added a 10 percent profit markup to total claims minus subcontractor costs, and a 5 percent markup for

subcontractor costs.  Mr. Van Noy did not take exception to the way they were calculated.  PX 1000-10.

Next, Mr. Van Noy verified the amount claimed in Count 7 and found that Meridian understated labor costs by $21,270.97.  PX 1000-25.  In response, Meridian adjusted the claim to reflect Mr. Van Noy's findings.  PX 1000-25.  Meridian also adjusted its claimed equipment costs in response to comments by Ms. Hadley.  PX 1000-25.  As the following table demonstrates, after these adjustments were made, Meridian's revised claim for costs incurred due to USACE's January 27, 2009 Suspension Order was $751,437.09.

| Table 7: Claim 7 - Suspension | |
| --- | --- |
| **Cost Description** | **Claim Amount** |
| Water Diversion System - Field Labor Cost | $     92,339.32 |
| Water Diversion System - Operating Cost | 167,220.00 |
| Water Diversion System - Standby Cost | - |
| Equipment Standby | 416,389.15 |
| Field Supervision and Office Cost | 54,417.47 |
| Small Tools | 7,641.59 |
| Payroll Burden Adjustment | 15,380.12 |
| Total Direct Costs | 753,387.65 |
| Markups | |
| Field Support | 29,608.13 |
| Home Office Overhead | 70,156.42 |
| Gross Receipts Tax | 41,339.66 |
| Bond | 5,942.87 |
| Profit | - |
| Subcontractor | - |
| Total Markups | 147,047.09 |
| Total Claim | 900,434.74 |
| Less Previous Payments | 148,997.65 |
| Net Claim Amount | $     751,437.09 |

PX 1000-26.

As to Count 8, Mr. Van Noy testified that Meridian's claim primarily was comprised of labor, material, equipment, and subcontractor costs incurred for backfilling portions of the excavated channel and maintaining a water diversion system.  PX 1000-27.  "All direct costs reviewed were adequately supported by the underlying accounting records."  PX 1000-27.  Meridian, however, reduced the claim based on comments by Ms. Hadley.  PX 1000-27.  After this adjustment, Meridian's revised claim totals $614,597.31 for the cost of completing backfill work in accordance with USACE's Unilateral Modification No. R23, of which $101,083.31 remains unpaid.  PX 1000-27.  The unpaid amount includes the following claim elements:

| Table 8: Claim 8 - Channel Fill ||
| Cost Description | Claim Amount |
| --- | --- |
| Backfill Channel | $ 359,757.50 |
| Water Diversion System | 66,877.44 |
| Adjustment from Meridian to Corps Equipment Rates | 13,188.12 |
| Equipment Standby Charges | 10,111.51 |
| Adjusting Entries | (22,181.29) |
| Small Tools | 17,102.46 |
| Payroll Burden Adjustment | 20,138.75 |
|    Total Direct Costs | 464,994.49 |
| Markups | |
|   Field Support | 18,274.28 |
|   Home Office Overhead | 43,300.88 |
|   Gross Receipts Tax | 28,216.64 |
|   Bond | 4,056.34 |
|   Profit | 55,625.06 |
|   Subcontractor | 129.60 |
|    Total Markups | 149,602.82 |
| Total Claim | 614,597.31 |
| Less Previous Payments | 513,514.00 |
| Net Claim Amount | $ 101,083.31 |

PX 1000-28.

Finally, Mr. Van Noy verified the amount claimed under Count 9, *i.e.*, the interim protection plan, finding that direct cost components of the claim did not require adjustments. But, he recommended that Meridian adjust its field support markup. PX 1000-29. After making that adjustment, Meridian's interim protection plan claim is:

| Table 9: Claim 9 - Interim Protection Plan | |
|---|---|
| **Cost Description** | **Claim Amount** |
| Interim Protection Plan | $    453,551.98 |
| Water Diversion System | 110,765.76 |
| Adjustment from Meridian to Corps Equipment Rates | 13,376.28 |
| Adjusting Entries | (559.98) |
| Small Tools | 11,169.65 |
| Payroll Burden Adjustment | 14,783.64 |
| Total Direct Costs | 603,087.33 |
| Markups | |
| Field Support | 23,701.33 |
| Home Office Overhead | 56,160.26 |
| Gross Receipts Tax | 36,588.53 |
| Bond | 5,259.86 |
| Profit | 71,822.93 |
| Subcontractor | 328.40 |
| Total Markups | 193,861.32 |
| Total Claim | 796,948.65 |
| Less Previous Payments | 258,258.32 |
| Net Claim Amount | $    538,690.33 |

PX 1000-30.

### b.   The Government's Expert In Federal Government Contract Accounting: Sam Hadley, C.P.A., C.F.E., C.F.M.[8]

In Ms. Hadley's March 10, 2014 testimony, she questioned six claim elements alleged in Counts 7, 8 and 9: (1) small tools rate; (2) payroll burden; (3) field support overhead; (4) home office overhead; (5) equipment rate; and (6) water diversion system rate.

---

[8] The Government proffered Ms. Hadley as an expert witness in federal government contract accounting. 6/16/2016 TR at 2567. Ms. Hadley has been an audit partner with the certified public accounting firm Cotton & Company, LLP, for sixteen years. 6/16/2016 TR at 2565. She is a Certified Public Accountant, a Certified Fraud Examiner, and Certified Financial Manager. 6/16/2016 TR at 2566. Ms. Hadley also holds two construction-related certifications regarding cost controls. 6/16/2016 TR at 2566. In addition, she has been qualified as an expert in: government contracting; FAR allowability; cost accounting; and government cost accounting. 6/16/2016 TR at 2566. Meridian did not object to Ms. Hadley's qualifications as an expert in federal contract accounting. 6/16/2016 TR at 2567. Accordingly, the court has determined that Ms. Hadley is an expert in her respective field and qualified to testify as such. *See* Fed. R. Evid. 702.

First, while Meridian used a $1.50 rate to allocate indirect small tools costs in their job cost system, it used a rate of $2.54 per labor hour to calculate its claimed costs. DX 1001-35. Meridian derived the higher rate by adding total *indirect* small tools costs to total *direct* small tools costs and dividing the sum by the number of labor hours charged to the project. DX 1001-35. Generally, projects do not purchase small tools. DX 1001-35. Instead, they obtain the tools from the Meridian's central office. Meridian charged the Joint Cost System an indirect small tools rate. DX 1001-35. Because the Chula Vista Project was far away from the central office, however, that project purchased many of its small tools locally charging the cost directly to the project. DX 1001-35. Therefore, there is potential overlap between the indirect and direct small tools costs and the use of both to calculate the small tools rate is duplicative. DX 1001-35. For this reason, Ms. Hadley concluded that either the $1.50 indirect or the $1.04 direct rate should be used to calculate Meridian's claimed costs, but not both. DX 1001-35.

Second, Meridian likely overstated its payroll burden. DX 1001-36. Meridian's regular practice was to allocate insurance and benefit costs to projects, using total contract billings as an allocation method. DX 1001-36. To calculate the claimed payroll burden, Meridian first estimated the insurance and benefit costs for the Chula Vista Project and included a credit in the claim for that amount, *i.e.*, 14.98 percent. DX 1001-36. Meridian then calculated a company-wide payroll burden rate that included insurance and benefit costs. DX 1001-36. Ms. Hadley concluded that Meridian's formula allocates indirect costs to projects using different methodologies and that this practice is likely to result in the recovery of more costs than were actually incurred. DX 1001-36. On the other hand, Meridian appears to have overestimated the insurance and benefit cost credit. DX 1001-36. Consequently, Meridian's payroll burden rate should be revised from 29.31 percent for 2008 and 2009, to 26.97 percent in 2008 and 30.91 percent in 2009. DX 1001-36.

Third, Meridian's 3.93 percent field support overhead rate was calculated, using a formula that incorporates erroneous small tools rate and equipment costs. DX 1001-37. Meridian also elected to apply a single field support overhead rate to its claimed costs for 2008 and 2009, even though Meridian's business changed significantly between those years. DX 1001-38. Therefore, Ms. Hadley advised the court that the rate should be revised to 2.06 percent for 2008 and 3.15 percent for 2009. DX 1001-38.

Fourth, Meridian's 8.96 percent home office overhead rate was questioned, because the rate included bonuses that were not allowable under the FAR; duplicated costs claimed under field support overhead; and violated standard accounting principles. DX 1001-39. In addition, Meridian applied a single home office overhead rate to both 2008 and 2009, though its business changed significantly between those years. DX 1001-39. The home office overhead rate should be reduced to 6.20 percent for 2008 and increased to 12.66 percent for 2009. DX 1001-39.

Fifth, Meridian's use of rates from the "USACE manual" to calculate equipment costs did not comply with the FAR. DX 1001-41. Under FAR 31.105(d)(2)(i)(A), however, a schedule of predetermined rates should not be used when actual cost data is available. [9] And, Meridian kept

---

[9] FAR 31.105 provides:

Actual cost data shall be used when such data can be determined for both ownership and operating costs for each piece of equipment, or groups of similar serial or series

records of actual equipment costs for internal accounting purposes.  Therefore, Meridian improperly relied on the USACE manual.  DX 1001-41.  Similarly, Meridian did not comply with FAR 31.105(d)(2)(i)(C), because it failed to exclude the cost allowances provided by the manual from its field support and home office overhead.[10]

Finally, Meridian claimed costs for the use and standby time of its water diversion system at a rate of $87.08 per hour when the system was in operation and $25.51 while it was on standby.  DX 1001-43.  Meridian, however, did not properly use the USACE Checkrate program to calculate the hourly rate and duplicated maintenance costs by including them in the hourly rate and claiming them directly.  DX 1001-43.  In addition, Meridian's rates did not reflect payments that USACE previously made.  DX 1001-43.  Therefore, the operating rate for the water diversion system should be reduced to at least $42.89 per hour.  DX 1001-43.

Ms. Hadley also challenged claim elements specific to Counts 7, 8 and 9.  With regard to Count 7, she testified that "Meridian . . . significantly overstated its claimed equipment hours, overstated its claimed equipment rates, claimed equipment it had sold, and claimed equipment duplicative of other claims."  DX 1001-23.  As for Count 8, Meridian claimed all general conditions costs incurred over a thirty-two day period when the job should only have taken twenty-five days to complete.  DX 1001-25.  In addition, Meridian claimed equipment costs under Count 8 that also were claimed under Count 7.  DX 1001-25–26.  And, as to Count 9, Meridian claimed all general conditions costs incurred over an eighty-four day period when the job should have been completed within sixty-five days.  DX 1001-28.

---

equipment, from the contractor's accounting records.  When such costs cannot be so determined, the contracting agency may specify the use of a particular schedule of predetermined rates or any part thereof to determine ownership and operating costs of construction equipment (*see* subdivisions (d)(2)(i)(B) and (C) of this section).  However, costs otherwise unallowable under this part shall not become allowable through the use of any schedule (*see* 31.109(c)).

48 C.F.R. 31.105(d)(2)(i)(A).

[10] FAR 31.105(d)(2)(i)(C) provides:

When a schedule of predetermined use rates for construction equipment is used to determine direct costs, all costs of equipment that are included in the cost allowances provided by the schedule shall be identified and eliminated from the contractor's other direct and indirect costs charged to the contract.  If the contractor's accounting system provides for site or home office overhead allocations, all costs which are included in the equipment allowances may need to be included in any cost input base before computing the contractor's overhead rate.  In periods of suspension of work pursuant to a contract clause, the allowance for equipment ownership shall not exceed an amount for standby cost as determined by the schedule or contract provision.

48 C.F.R. 31.105(d)(2)(i)(C).

For these reasons, Ms. Hadley advised the court that the amount claimed under Count 7 should be adjusted from $751, 437.09 to $416,046.09, as follows:

| Description | Claimed Costs | Questioned |
|---|---|---|
| Water Diversion System - Field Labor Cost | $99,981 | $3,129 |
| Water Diversion System - Operating Cost | 167,220 | 68,492 |
| Equipment Standby | 416,389 | 216,277 |
| Field Supervision and Office Cost | 54,417 | 6,574 |
| Less: Payroll Taxes in Labor Amounts | (21,038) | (1,396) |
| Add Back Payroll Burden | 36,418 | (387) |
| Total Direct Costs | 753,387 | 292,689 |
| Field Support Rate | 3.93% | 0.78% |
| Field Support Costs | 29,608 | 15,096 |
| Subtotal | 782,995 | 307,785 |
| Home Office Rate | 8.96% | (3.70%) |
| Home Office Costs | 70,156 | 9,994 |
| Subtotal | 853,151 | 317,779 |
| GRT and Bond | 47,283 | 17,612 |
| Subtotal | 900,434 | 335,391 |
| Previously Paid | (148,998) | (0) |
| Subtotal | 751,436 | 335,391 |
| Rounding Error Adjustment | 1 | 0 |
| Total | $751,437 | $335,391 |

DX 1001-22.

Similarly, Count 8 should be adjusted from $101,083.31 to $72,979.31, as follows:

| Description | Claimed Costs | Questioned |
|---|---|---|
| Backfill Channel | $376,860 | $7,694 |
| Water Diversion System | 66,877 | 24,753 |
| Adjustment to Corps Equipment Rates | 13,188 | 13,188 |
| Equipment Standby | 10,112 | 0 |
| Adjusting Entries | (22,181) | (8,057) |
| Less: Payroll Taxes in Labor Amounts | (30,326) | (1,683) |
| Add Back Payroll Burden | 50,465 | (3,207) |
| Total Direct Costs | 464,995 | 32,688 |
| Field Support Rate | 3.93% | 0.78% |
| Field Support Costs | 18,274 | 4,656 |
| Subtotal | 483,269 | 37,344 |
| Home Office Rates | 8.96% | (3.70%) |
| Home Office Costs | 43,301 | (13,153) |
| Subtotal | 526,570 | 24,191 |
| GRT, Bond, and Profit Mark-up | 88,028 | 3,913 |
| Credit for Previous Payments | (513,514) | 0 |
| Subtotal | 101,084 | 28,104 |
| Rounding Error Adjustment | (1) | 0 |
| Total | $101,083 | $28,104 |

DX 1001-25.

Finally, Count 9 should be adjusted from $538,690.33 to $475,310.33, as follows:

| Description | Claimed Costs | Questioned |
|---|---|---|
| Interim Protection Plan | $464,722 | $14,625 |
| Water Diversion System | 110,766 | 40,999 |
| Adjustment to Corps Equipment Rates | 13,376 | 10,406 |
| Adjusting Entries | (560) | (560) |
| Less: Payroll Taxes in Labor Amounts | (22,509) | (1,765) |
| Add Back Payroll Burden | 37,293 | (1,577) |
| Total Direct Costs | 603,088 | 62,128 |
| Field Support Rate | 3.93% | 0.78% |
| Field Support Costs | 23,701 | 6,661 |
| Subtotal | 626,789 | 68,789 |
| Home Office Rate | 8.96% | (3.70%) |
| Home Office Costs | 56,160 | (14,483) |
| Subtotal | 682,949 | 54,306 |
| GRT, Bond, and Profit Mark-up | 114,000 | 9,074 |
| Subtotal | 796,949 | 63,380 |
| Previously Paid | (258,258) | 0 |
| Subtotal | 538,691 | 63,380 |
| Rounding Error Adjustment | (1) | 0 |
| Total | $538,690 | $63,380 |

DX 1001-28.

### 3.     The Court's Resolution.

#### a.     The Relevant Legal Standard.

An equitable adjustment is a "corrective measure utilized to keep a contractor whole when the Government modifies a contract." *Bruce Const. Corp. v. United States*, 324 F.2d 516, 518 (Ct. Cl. 1963). "[T]he proper measure of an equitable adjustment is the value of the reasonable cost impact on the contractor." John Cibinic, Ralph C. Nash and James F. Nagle, ADMINISTRATION OF GOVERNMENT CONTRACTS 596 (5th ed. 2016) ("CN&N") (citing *Bruce Const. Corp.*, 324 F.2d at 518 ("Since the purpose underlying [equitable] adjustments is to safeguard the contractor against increased costs engendered by the modification, it appears patent that the measure of damages . . . must be . . . closely related to and contingent upon the altered position in which the contractor finds himself [.]")).

Equitable adjustments generally include a reasonable markup for profit and overhead. *See Bruce Const. Corp.*, 324 F.2d at 519 (holding that an equitable adjustment includes the cost of additional work and "the addition to that cost of a reasonable and customary allowance for profit") (quoting *United States v. Callahan Walker Const. Co.*, 317 U.S. 56, 61 (1942)). This applies to equitable adjustments under the Changes Clause. *See* 48 C.F.R. 52.243-4(d). Adjustments under the Suspension Clause, however, exclude profit. *See* 48 C.F.R. 52.242-14 ("If the performance of all or any part of the work is, for an unreasonable period of time, suspended, . . . an adjustment shall be made for any increase in the cost of performance of this contract (*excluding profit*)[.]"

(emphasis added)); *see also* CN&N at 524 ("'[A]djustments' under the Suspension of Work clause exclude profit from recovery.").

The party claiming an equitable adjustment bears the burden of proving the amount of adjustment. *Nager Elec. Co. v. United States*, 442 F.2d 936, 946 (Ct. Cl. 1971). As in other civil actions, the standard used to determine whether the burden of proof has been met is the "preponderance of the evidence" test. *See Timber Investors, Inc. v. United States*, 587 F.2d 472, 479 (Ct. Cl. 1978). Under the preponderance of the evidence standard, the claimant must convince the trier of fact "that the existence of [the disputed] fact is more probable than its nonexistence." *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted) (quoting *In re Winship*, 397 U.S. 358, 371–372 (1970)). The claimant, however, "need not prove his damages with absolute certainty or mathematical exactitude. It is sufficient if he furnishes the court with a reasonable basis for computation, even though the result is only approximate." *Wunderlich Contracting Co. v. United States*, 351 F.2d 956, 968 (Ct. Cl. 1965).

The September 21, 2007 Contract, at issue in this case, provides that "[w]hen costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR part 31 . . . apply." JX 2-141 (incorporating 48 C.F.R. 252.243-7001).

### b.   "Claim Elements" Alleged In Counts 7, 8 And 9 Of The May 19, 2014 Second Amended Complaint.

### i.   Regarding Meridian's Small Tools Costs.

Ms. Hadley testified that Meridian's small tools rate does not comply with FAR part 31, because Meridian did not provide adequate documentation to demonstrate that the rate does not include duplicative costs. DX 1001-35; 6/16/2016 TR 2601. Specifically, Meridian's small tools costs were based on a $2.54 rate that included both direct and indirect small tools costs, and that there was likely overlap between those costs. DX 1001-35; 6/16/2016 TR 2601. For this reason, either the $1.50 indirect rate or the $1.04 direct rate should be used to calculate Meridian's claimed costs, but not both. DX 1001-35.

Meridian did not provide any documentation to rebut Ms. Hadley's testimony that the approach Meridian used to derive the small tools rate is likely to duplicate costs. 6/16/2016 TR at 2472, 74, 89–91. Moreover, Mr. Van Noy's testimony at the hearing did not directly address Ms. Hadley's concerns regarding the small tools rate, admitting that he did not evaluate the methods or approaches that Meridian used to calculate those costs. 6/16/2016 TR at 2505. In fact, Mr. Van Noy's testimony even appears to concede that Meridian's claim contains some duplication, as Meridian did not accept some of Ms. Hadley's adjustments because,

> there were [] offsetting amounts . . . that should have been in the claim that were not, so basically what [Mr. Van Noy had was] kind of a net effect schedule. . . . [I]f

[there] was an [adjustment] that should be made and didn't net out well, *then* [Mr. Van Noy] would make the adjustment.

6/16/2016 TR at 2537–38 (emphasis added).

Accordingly, Meridian has failed to present any evidence to rebut Ms. Hadley's testimony that the approach Meridian used to derive the small tools rate—amalgamating direct and indirect costs—is likely to produce duplication. Therefore, Meridian failed to establish, by a preponderance of the evidence, that it incurred small tools costs at a rate of $2.54 per hour. Instead, the court finds that Meridian is entitled to recover small tools costs at a reduced $1.50 rate.

### ii.      Regarding Meridian's Payroll Burden Costs.

Mr. Van Noy testified that he evaluated Meridian's payroll burden calculations step-by-step and verified that each component of the calculation agreed with Meridian's accounting system reports. PX 1000-8–9. Mr. Van Noy did not find any mistakes with Meridian's 29.31 percent payroll burden rate. PX 1000-9.

Ms. Hadley, however, advised the court that Meridian calculated its payroll burden using a formula that deviated from Meridian's usual accounting practice and, as a result, Meridian's claimed costs might exceed its incurred costs. DX 1001-6. Instead, Ms. Hadley recommended that Meridian's 29.31 percent payroll burden rate should be changed to 26.97 percent for 2008 and 30.91 percent for 2009. DX 1001-36.

The claims at issue in this litigation only concern costs that Meridian incurred during 2009. Sec. Am. Compl. at ¶ 248, 62, 73. Ms. Hadley's suggested payroll burden rate for 2009 (30.91 percent), however, is greater than Meridian's claimed rate (29.31 percent). Meridian did not rebut Ms. Hadley's testimony regarding payroll burden. Based on the absence of rebuttal evidence, the court finds that Meridian incurred payroll burden costs at a rate of 30.91 percent.

### iii.      Regarding Meridian's Field Support Overhead Costs.

Meridian produced hundreds, if not thousands, of documents in support of the field support overhead costs claimed in Counts 7, 8 and 9 of the May 19, 2014 Second Amended Complaint including time cards, invoices, salary input forms, subcontractor payments, and quality control reports. *See, e.g.*, JX 71; *see also* 6/16/2016 TR at 2451–54. Mr. Van Noy also testified that he "verified the field support rate calculations and agreed the components of the calculations to Meridian's accounting system reports," finding, and resolving, only one mistake. PX 1000-9.

Ms. Hadley, however, testified that Meridian's field support overhead costs were calculated using a 3.93 percent field support overhead rate. DX 1001-37. This rate allocates *indirect* field support costs to Meridian's projects by dividing a pool of those costs (numerator) by an allocation base (denominator). But, Meridian includes *direct* field support overhead costs in its allocation base and therefore does not properly distinguish between direct and indirect costs as

required by FAR 31.202(a)[11] and FAR 31.203(b).[12]  DX 1001-37.  For this reason, Ms. Hadley advised the court to eliminate direct field support overhead costs from the allocation base.

Ms. Hadley also testified that Meridian's pool of indirect field support costs includes an over-recovery or under-recovery of equipment costs that Meridian calculated using internal equipment rates.  DX 1001-37.  Meridian, however, is claiming equipment costs based on different rates, contained in the USACE's manual, and has not adjusted its field support overhead pool to reflect that change.  6/16/2016 TR at 2467.  In addition, Meridian has not provided sufficient documentation to properly calculate the amount of this miscalculation.  DX 1001-37.  Therefore, Ms. Hadley advises the court to eliminate the equipment account balance from the cost pool.  DX 1001-38.

Finally, Ms. Hadley advised that Meridian improperly calculated a single field support overhead rate for both 2008 and 2009.  DX 1001-37.  FAR 31.203(e) provides that "[t]he method of allocating indirect costs may require revision when there is a significant change in the nature of the business, the extent of subcontracting, fixed-asset improvement programs, inventories, the volume of sales and production, manufacturing processes, the contractor's products, or other relevant circumstances."  48 C.F.R. 31.203(e).  Between 2008 and 2009, the Chula Vista Project incurred a number of serious problems that led to the suspension (JX 172) and scaling back of the project (JX 138).  Accordingly, a separate field support overhead rate should be calculated for each year.  DX 1001-37.  If all of Ms. Hadley's adjustments are accepted, Meridian's field support

---

[11] FAR 31.202(a) provides:

No final cost objective shall have allocated to it as a direct cost any cost, if other costs incurred for the same purpose in like circumstances have been included in any indirect cost pool to be allocated to that or any other final cost objective.  Direct costs of the contract shall be charged directly to the contract.  All costs specifically identified with other final cost objectives of the contractor are direct costs of those cost objectives and are not to be charged to the contract directly or indirectly.

48 C.F.R. 31.202(a).

[12] FAR 31.203(b) provides:

After direct costs have been determined and charged directly to the contract or other work, indirect costs are those remaining to be allocated to intermediate or two or more final cost objectives.  No final cost objective shall have allocated to it as an indirect cost any cost, if other costs incurred for the same purpose, in like circumstances, have been included as a direct cost of that or any other final cost objective.

48 C.F.R. 31.203(b).

overhead rate would be reduced from 3.93 percent to 2.06 percent in 2008 and to 3.15 percent in 2009.[13]  DX 1001-38.

Meridian, however, did not present any evidence to contradict Ms. Hadley's testimony.  At the June 16, 2016 hearing, Mr. Haworth admitted that Meridian did not produce any new documentation in response to Ms. Hadley's March 10, 2014 testimony regarding the field support overhead rate.  6/16/2016 TR at 2462.  In addition, Mr. Van Noy testified that he did not have an opinion regarding Meridian's methodology or approach to calculating those claims.  6/16/2016 TR at 2505.  Because Meridian did not produce any evidence to rebut Ms. Hadley's testimony, Meridian has failed to establish, by a preponderance of the evidence, that it incurred field support overhead costs at a rate of 3.93 percent.  The court finds that Meridian is entitled to recover field support overhead costs at a rate of 3.15 percent.

### iv.    Regarding Home Office Overhead Costs.

Meridian produced hundreds of documents in support of the home office overhead costs claimed in Counts 7, 8 and 9 of the May 19, 2014 Second Amended Complaint, including time cards, invoices and salary input forms.  *See, e.g.*, JX 71; 6/16/2016 TR at 2451–54.  In addition, Mr. Van Noy testified that he "verified the home office overhead rate calculations and agreed the components of the calculations to Meridian's accounting system reports."  PX 1000-9.

Ms. Hadley, however, testified that Meridian's home office overhead rate included unallowable bonus costs.  DX 1001-39.  Under FAR 31.205-6(f), bonuses are allowable if they "are paid or accrued under an agreement entered into in good faith between the contractor and the employees before the services are rendered or pursuant to an established plan or policy followed by the contractor so consistently as to imply, in effect, an agreement to make such payment."  48 C.F.R. 31.205-6(f)(1)(i).  Meridian did not have such an agreement or policy.  DX 1001-39.  Therefore, under FAR 31.203(e), the home office overhead rate for 2008 and 2009 should be calculated separately.  DC 1001-38.

Ms. Hadley advised that Meridian's home office overhead rate be adjusted from 8.96 percent to 6.20 percent in 2008 and 12.66 percent in 2009.  DX 1001-39.  Because the claims at issue in this litigation only allege costs incurred during 2009, Ms. Hadley's recommendation would increase Meridian's claimed home office overhead rate for Counts 7, 8 and 9 of the May 19, 2014 Second Amended Complaint.  Meridian did not rebut Ms. Hadley's testimony.  Therefore, the court finds that Meridian incurred home office overhead costs at a rate of 12.66 percent.

### v.    Regarding Meridian's Use Of The USACE Manual.

Ms. Hadley testified that Meridian's use of the USACE manual to calculate equipment costs was inconsistent with the FAR, because Meridian developed and used an internal equipment rate to track costs across projects.  DX 1001-41.  Mr. Van Noy countered that Meridian captured equipment costs through an estimated charge rate based on historical costs.  6/16/2016 TR at 2624.

---

[13] As mentioned above, the claims at issue in this litigation only involve costs incurred during 2009.  Therefore, with regard to the relevant claims, Ms. Hadley's recommendations would reduce the field support overhead rate from 3.93 to 3.15.

Meridian tracks its actual equipment costs at the company level, not at the project or equipment levels and periodically reconciles its estimated charges to actual costs, by allocating the difference across projects.  6/16/2016 TR at 2624–25.  Thus, while Meridian tracks actual equipment costs, it does not maintain "actual cost data" for each project or each piece of equipment.  6/16/2016 TR at 2624–25.

Therefore, Meridian does not have "actual cost data" for equipment costs.  Under FAR 31.105(d)(2)(i)(A), "[a]ctual cost data shall be used when such data can be determined for both ownership and operating costs for each piece of equipment.  *When such costs cannot be so determined, the contracting agency may specify the use of a particular schedule of predetermined rates*[.]"  48 C.F.R. 31.105(d)(2)(i)(A) (emphasis added).  The Government, however, failed to present evidence, other than Ms. Hadley's testimony, of what "actual cost data" was available to calculate Meridian's claimed equipment costs, as required by FAR 31.105(d)(2)(i)(A).  Therefore, the court finds that Meridian  properly relied on the USACE manual to calculate equipment costs.

### vi.     Regarding The Water Diversion System.

Finally, Meridian claimed costs for the use and standby time of the water diversion system at a rate of $87.08 per hour and $25.51 per hour respectively.  JX71-22.  Ms. Hadley testified that these rates, improperly included costs for labor, pipes, fittings, and pumps.  6/16/2016 TR at 2570.  Because Meridian was obligated to install a water diversion system under the September 21, 2007 Contract, labor is a sunk costs, *i.e.*, included in the bid price.  6/16/2016 at 2572.  Therefore, Meridian's water diversion system claim should not include labor costs.  6/16/2016 TR at 2577–78.

Ms. Hadley also testified that pipes and fittings should not be included in the operation costs of the water diversion system, because that equipment does not require "fuel or filters, oil and grease or repairs and maintenance.  [They do not] really have operating costs."  6/16/2016 TR at 2574.  Therefore, the costs of the pipes and fittings for the water diversion system should be calculated separately as ownership costs.  6/16/2016 TR at 2574–75.  Therefore, Ms. Hadley advised that the operating rate for the pumps should be adjusted to $42.89 per hour and the standby rate should be $6.21 per hour.  DX 1001-44.  The pipe and fitting costs should be calculated separately at a rate of $287.01 per day.  DX 1001-4.

Mr. Sutton testified that "the water diversion system . . . was part of Meridian's bid price at the outsets," and that "as part of Meridian's bid price, it included the cost of . . . the parts [and labor] that would be needed to fabricate [the dewatering system]."  6/16/2016 TR at 2559.  Mr. Sutton also testified that modifications made to the water diversion system were unrelated to the "suspension period of time for which Meridian is seeking compensation [in this litigation]."  6/16/2016 TR at 2560.

In addition, Mr. Van Noy testified that,

I think the issue here . . . is Ms. Hadley took the position that the only thing that should go into the CheckRate system were the costs of the pumps. . . . [But, the water diversion system is] like . . . a car.  You don't pay just for the parts of the car; you have to pay for everything it takes to bring those parts together and make it a

working car. . . . [Meridian] had to by all the equipment; they had to put it together; they had to get it to work, which took a number of months. . . . So that was the process, and that really is the major disagreement between . . . my position or Mr. Haworth's position and Ms. Hadley's position . . . whether it's a system or it's individual components.

6/16/2016 TR at 2521–22.

As a matter of law, equitable adjustments are corrective measures utilized to keep a contractor whole when the Government modifies a contract. *See Pac. Architects & Engineers, Inc. v. United States*, 491 F.2d 734, 739 (Ct. Cl. 1974). But, "[i]t is well established that [an] equitable adjustment may not properly be used as an occasion for reducing or increasing the contractor's profit or loss, or for converting a loss to a profit or vice versa, for reasons unrelated to a change." *Id*. Under the September 21, 2007 Contract, Meridian agreed to acquire and install a water diversion system. 6/16/2016 TR at 2559; *see also* JX2-5; JX3-3. Labor was included in the contract price and the amount of labor required to acquire and install the dewatering system was not altered by the USACE's suspension, backfill work, and interim protection project orders. 6/16/2016 TR at 2559–61. For this reason, Meridian's holistic approach to calculating dewatering system costs would allow Meridian to recover costs that were included in the contract price. Therefore, Meridian's claimed labor costs for the water diversion system exceed the amount of equitable adjustment that it is entitled to recover.

Regarding pipes and fittings, Meridian did not rebut Ms. Hadley's testimony that those pieces of equipment do not have operating costs. 6/16/2016 TR at 2574. For these reasons, Meridian has not established that it incurred costs for the use and standby time of the water diversion system at a rate of $87.08 per hour and $25.51 per hour respectively. Instead, the court finds that, Meridian incurred dewatering costs at a rate of to $42.89 per hour during operations and $6.21 per hour during standby. Pipe and fitting costs should be calculated separately at a rate of $287.01 per day.

### vii.    Regarding Standby Equipment Costs.

With regard to "standby equipment," Ms. Hadley testified that "Meridian . . . significantly overstated its claimed equipment hours, claimed equipment it had sold, and claimed equipment duplicative of other claims." DX 1001-23. In addition, she advised that the costs claimed by Meridian were inconsistent with Meridian's time sheets, equipment log, daily reports and other contemporaneous documentation. DX 1002-3. In light of these discrepancies, Ms. Hadley concluded that Meridian's $416,389 claimed costs for standby equipment should be reduced to $200,112. DX 1001-26–27.

During the June 16, 2016 evidentiary hearing, Mr. Haworth admitted that the total number of equipment hours claimed during the suspension of work are not consistent with Meridian's contemporaneous records. 6/16/2016 TR at 2468–71. Therefore, Meridian failed to rebut Ms. Hadley's testimony that Meridian significantly overstated its standby equipment costs. For these reasons, the court finds that, during the suspension period, Meridian incurred $200,112 in standby equipment costs.

####      viii.      Regarding The Amount Of Time That Meridian Took To Perform The Backfill And Interim Protection Work Orders.

Regarding Count 8 of the May 19, 2014 Second Amended Complaint, Ms. Hadley testified that Meridian claimed costs incurred over a thirty-two day period when the job should only have taken twenty-five days. DX 1001-25. Similarly, as to Count 9, Meridian claimed costs incurred over an eighty-four day period when the job should have been completed within sixty-five days. DX 1001-28.

The proper measure of equitable adjustment is the value of the reasonable costs incurred by the contractor. *See Bruce Const. Corp.*, 324 F.2d at 518. In addition, the claimant bears the burden of proving that incurred costs are reasonable. *See Nager Elec. Co.*, 442 F.2d at 946; *see also* 48 C.F.R. 31.201-3 ("[T]he burden of proof shall be upon the contractor to establish that [the claimed] cost is reasonable."). FAR 31.201-3 also provides that "[a] cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business[.]" 48 C.F.R. 31.201-3.

Ms. Hadley derived the twenty-five and sixty-five day period from a technical analysis of Meridian's claims, that was never introduced into evidence. The report is therefore inadmissible hearsay. Fed. R. Evid. 802. Although an expert may rely on inadmissible evidence to support an opinion, he may do so only when "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The Government, however, has failed to demonstrate that government accounting experts reasonably rely on technical evaluations. Thus, Ms. Hadley's testimony regarding the reasonableness of the time Meridian took to perform the backfill and interim protection orders is inadmissible. Fed. R. Evid. 703. As such, there is no support in the record for the court to find that the maximum amount of time that a reasonable person would have spent on the backfill work and interim protection projects was twenty-five and sixty-five days respectively. On the other hand, Meridian's history of timely compliance with USACE modifications despite the problems that plagued the Chula Vista Project, support a finding that Meridian spent a reasonable amount of time completing the backfill and interim protection work.

####      c.      The Total Equitable Adjustment That Meridian Is Due For Count 7, 8 And 9 Of The May 19, 2014 Second Amended Complaint.

Meridian's claims are the sum of direct and markup costs.[14] Meridian claimed total direct costs of $1,821,469.47. PX 1000-26, 28, 30. Based on the court's findings, Meridian's direct costs are reduced by (1) $14,233.00 for small tools; (2) $134,244.00 for the water diversion system;

---

[14] As discussed above, Meridian's markup costs are calculated by multiplying markup rates by total direct costs. Markup rates include: (1) field support overhead; (2) home office overhead; and (3) gross receipt tax, bond and profit. Direct costs include: (1) small tools; (2) equipment standby; (3) field labor for the water diversion system; (4) operating the water diversion system; and (5) payroll burden.

and (3) $216,277.00 for standby equipment. DX 1001-22, 25, 26, 28. But, Meridian's payroll burden costs are increased by $10,015. DX 1001-22, 25, 28. Therefore, the court has determined that Meridian's claimed direct costs are $1,466,730.47.

Meridian claimed markup costs of $490,511.23. PX 1000-26, 28, 30. Meridian's direct costs, however, fell by 19.47 percent. Thus, claimed markup is reduced proportionally to $394,982.06. In addition, Meridian's claimed field support overhead rate is reduced from 3.93 percent to 3.15 percent or a decrease in field support overhead costs of $11,440.49. DX 1001-22, 25, 28. But, Meridian's claimed home office overhead rate is adjusted upward from 8.96 percent to 12.66 percent or increased by $54,269.03. In total, Meridian's adjusted markup costs equal $437,810.60.

For these reasons, the court had determined that the sum of Meridian's adjusted direct and markup costs should be $1,904,541.07. Of that amount, the Government has already paid Meridian $920,769.97. PX 1000-22, 25, 28. Therefore, Meridian is entitled to an equitable adjustment of $983,771.10 for Counts 7, 8 and 9 of the May 19, 2014 Second Amended Complaint.[15]

> ### d.    Under The September 21, 2007 Contract And The Contract Disputes Act, Meridian Also Is Entitled To Recover Interest On The Equitable Adjustment That It Is Due.

Under 28 U.S.C. § 2516(a), "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof."

The September 21, 2007 Contract incorporates FAR 52.233-1(h), providing:

> The Government shall pay interest on the amount found due and unpaid from . . . the date that the Contracting Officer receives the claim (certified, if required) . . . until the date of payment. . . . Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the [CDA, 41 U.S.C.§ 7109], which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6–month period as fixed by the Treasury Secretary during the pendency of the claim.

JX2-106 (incorporating 48 C.F.R. 52.233-1(h)). Moreover, "[c]laim, as used in this clause, means a written demand or written assertion by one of the contracting parties, as a matter of right, the payment of money in a sum certain, [or] the adjustment . . . of contract terms." JX2-105 (incorporating 48 C.F.R. 52.233-1(c)). Because the September 21, 2007 Contract provides for the payment of interest on adjustments that are found due and unpaid, Meridian may recover from the Government, interest on the $983,771.10 equitable adjustment that it is due for costs incurred as a

---

[15] As discussed above, the Government stipulated that it owed Meridian $964,355.73, because of the USACE's suspension order, backfill work order and interim protection project order. Jt. Stip. at ¶ 10. The court's equitable adjustment exceeds the Government's stipulated amount by $19,415.37.

result of USACE's suspension, backfill and interim protection orders. *See Foley Co. v. United States*, 11 F.3d 1032, 1036 (Fed. Cir. 1993) (affirming award of equitable adjustment plus interest).

The September 21, 2007 Contract also provides that "[t]his contract is subject to the Contract Disputes Act[.]" JX2-105 (incorporating 48 C.F.R. 52.2331-h). Under the September 21, 2007 Contract and the CDA, interest accrues from the date that the Contracting officer receives the claim until the date of payment. JX2-106; *see also* 41 U.S.C.§ 7109(a)(1). In this case, Meridian submitted a certified claim to the USACE Contracting Officer on January 7, 2014. JX33. Therefore, Meridian is entitled to recover an additional interest on the $983,771.10 equitable adjustment from January 7, 2014, the date that Meridian submitted a certified claim to the Contracting Officer, to the date of payment.

Under section 7109(b) of the CDA, "[i]nterest shall accrue and be paid at a rate which the Secretary of the Treasury shall specify as applicable for each successive 6-month period. The rate shall be determined by the Secretary of the Treasury." 41 U.S.C. § 7109(b). The applicable interest rates, as determined by the Secretary of the Treasury, are:

- January 1–June 30, 2014: 2.125 per cent, per year. *See* 79 FED. REG. 2, 424 (Jan. 3, 2014).

- July 1–December 31, 2014: 2 per cent, per year. *See* 79 FED. REG. 126, 37391 (July 1, 2014).

- January 1– June 30, 2015: 2.125 per cent, per year. *See* 79 FED. REG. 250, 78951 (Dec. 31, 2014).

- July 1–December 31, 2015: 2.375 per cent, per year. *See* 80 FED. REG. 131, 39483 (Jan. 9, 2015).

- January 1–June 30, 2016: 2.5 per cent, per year. *See* 80 FED. REG. 251, 81880 (Dec. 31, 2015).

- June 1–December 31, 2016: 1.875 per cent, per year. *See* 80 FED. REG. 129, 44088 (July 6, 2016).

Finally, Meridian is entitled to simple interest on the $983,771.10 equitable adjustment. 48 C.F.R. 52.233-1(h). Simple interest is calculated as $I = Prt$, where "I" is interest, "P" is principal, "r" is the interest rate, and "t" is the unit of time. As of December 30, 2016, the Government owes Meridian interest in the following amounts:

| Period | Principal | Interest Rate | Time (in years) | Amount of Interest |
|---|---|---|---|---|
| January 7–June 30, 2014 | $983,771.10 | 0.02125 | 175/365 | $10,023.01 |
| July 1–December 31, 2014 | $983,771.10 | 0.02 | 184/365 | $9,918.57 |

| January 1– June 30, 2015 | $983,771.10 | 0.02125 | 181/365 | $10,366.66 |
| July 1–December 31, 2015 | $983,771.10 | 0.02375 | 184/365 | $11,778.30 |
| January 1–June 30, 2016 | $983,771.10 | 0.025 | 182/366 | $12,229.94 |
| June 1–December 30, 2016 | $983,771.10 | 0.01875 | 183/366 | $9,222.85 |
| **Total** | - | - | - | $63,539.33 |

## III.    CONCLUSION.

For these reasons, the court has determined that Meridian is entitled to an equitable adjustment of $983,771.10, plus interest, pursuant to 41 U.S.C. § 7109(b).  Interest will accrue from January 7, 2014 to the date of payment.  As of December 30, 2016, the Government owes Meridian $63,539.33 in interest.  The Clerk of Court is directed to enter judgment in accord with this disposition.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**