# In the United States Court of Federal Claims

No. 11-492C

(Filed: September 23, 2019)

| | |
|---|---|
| **MERIDIAN ENGINEERING COMPANY**, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | )<br>) |
| **THE UNITED STATES**, | )<br>) |
| Defendant. | )<br>)<br>) |

Post-remand decision on claims arising out of a contract for construction of a flood control project; accord and satisfaction; proper subject matter; inapplicability of releases to preclude relief; damages

Michael H. Payne, Cohen, Seglias, Pallas, Greenhall & Furman PC, Philadelphia, Pennsylvania, for plaintiff.

John H. Roberson, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Allison Kidd-Miller, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

This contract case returns to the court on remand from the United States Court of Appeals for the Federal Circuit. The parties' dispute relates to a contract between Meridian Engineering Company ("Meridian") and the United States Army Corps of Engineers ("Corps") for the construction of a flood control project in Nogales, Arizona, near the border with Mexico. Numerous issues arose during construction that ultimately led to the project's suspension after partial completion. The parties' disagreement over costs led Meridian to file suit at this court in 2011 under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109.

The court conducted two trials, one held in 2014 and one in 2016, on the issues of liability and damages respectively. *See Meridian Eng'g Co. v. United States*, 122 Fed. Cl. 381 (2015) ("*Meridian I*") (liability); *Meridian Eng'g Co. v. United* States, 130 Fed. Cl. 147 (2016) ("*Meridian II*") (damages). Following these two trials, the government was held to be liable on some counts of the complaint and Meridian was awarded damages in the amount of $983,771.10 plus interest. *Meridian II*, 130 Fed. Cl. at 172. Meridian appealed from the final judgment. *See*

*Meridian Eng'g Co. v. United States*, 885 F.3d 1351 (Fed. Cir. 2018) ("*Meridian III*"). The Federal Circuit considered numerous issues on appeal, resulting in a mixed disposition of partial affirmance, partial vacatur, partial reversal, and remand. *See id.* at 1367. Specifically of relevance now, the court vacated and remanded the court's findings in *Meridian I* with respect to Meridian's flood-events claim ("Count 4") and Meridian's unpaid contract-quantities claim ("Count 6") and reversed and remanded this court's interest award in *Meridian II. See id.* When the remanded case returned to this court, it was transferred from the originally assigned judge to the undersigned.

The sole issues remaining for the court are Count 4, as to both liability and damages, and the interest calculation.[1]  For Count 4, this court was instructed on remand "to consider whether the parties reached a meeting of the minds on the flood event claims in light of all of the evidence." *Id.* at 1365 (citation omitted).  Separately, the Federal Circuit instructed this court "to enter the correct accrual date [for interest] as January 7, 2011, and recalculate the amount of interest in accordance with the correct accrual date." *Id.* at 1354 n.2.  A hearing was held on September 4, 2019 to consider these remaining issues.  Additionally, the court has reviewed the documentary and testimonial evidence adduced and addressed at trial, and the case is now ready for disposition.

## FACTS[2]

On September 21, 2007, the United States Army Corps of Engineers awarded Meridian, an engineering and construction firm based in Tucson, Arizona, a $5.8 million contract to undertake and construct a flood control project for the Chula Vista Channel in Nogales, Arizona. JX193-1.[3]  During the beginning stages of the project, Meridian requested electronic drawings and survey files from the Corps on multiple occasions, but failed to receive them. *See, e.g.*, JX110 at 3 (requesting drawings on Oct. 29, 2007); DX726 at 4 (requesting again on Nov. 14, 2007); PX134 (explaining that the drawings had not yet been received as of Dec. 4, 2007).  The drawings were sent by the Corps to Meridian on December 26, 2007. *See* JX110 at 9.  Following receipt of the drawings, Meridian was able to commence construction in early January 2008. *See* JX78 at 531.

---

[1]As the case was being briefed on remand, the parties settled Count 6 and that Count was voluntarily dismissed by the plaintiff and is no longer at issue.  *See* Notice (Sept. 19, 2019), ECF No. 179 (payment of $225,000 received by Meridian in settlement of Count VI); Stipulation of Dismissal (Sept. 20, 2019) (ECF No. 180) (parties' stipulation that Count VI be and is dismissed with prejudice).

[2]The recitation of facts constitutes the court's principal findings of fact in accord with Rule 52(a) of the Rules of the Court of Federal Claims ("RCFC"). Other findings of fact and rulings on questions of mixed fact and law are set out in the analysis. A more complete recitation of facts is described in *Meridian I. See* 122 Fed. Cl. at 385-97.

[3]Citations to plaintiff's exhibits are identified as "PX___," defendant's exhibits are identified as "DX___," and the parties' joint exhibits are identified as "JX___."

Initial construction continued steadily until February and March, 2008 when Meridian encountered subsurface flows and soil issues causing stability problems for construction. *See, e.g.*, PX17; JX57. Meridian alerted the Corps to these issues, *see* JX57, and in response, the Corps issued additional requests for proposals, *see, e.g.*, JX159, and modifications, *see, e.g.*, JX118 (referencing modification R3).[4] Problems continued to arise throughout the construction process, increasing the project's scope and duration. *See, e.g.*, PX146 at 1-6 (detailing the issues and revised project schedule). Additional modifications were issued by the Corps in the months following, including the addition of a new access ramp via Modification R6 on May 8, 2008, *see* JX121, that increased the contract price and eventually led to schedule delays, *see* PX389 at 18-19. Following further issues, the Corps issued a subsequent bilateral modification, modification R8, on June 5, 2008, which extended the schedule by twelve calendar days but deleted the additional work on the access ramp originally added in R6. *See* JX123. Modification R8 also included the following release language: "[T]his adjustment constitutes compensation in full on behalf of the Contractor . . . for all costs and markups directly or indirectly attributable for the change ordered, for all delays related thereto, for all extended overhead costs, and for performance of the change within the time frame stated." JX123 at 2.

Further modifications were issued, *see, e.g.*, JX125, as construction continued into late June 2008 to the point that concrete could be poured for the channel invert, *see, e.g.*, JX78 at 167-69. Flooding of the work site, beginning about this same time, led to numerous delays in the work plan. *See* JX78 at 158 ("Work was stop[p]ed because of the flood and the damage[] that resulted from it. Additionally, Meridian is unable to proceed with their work plans for the weekend."). This flooding continued to adversely affect progress on the worksite, with Meridian reporting incidents of continued flooding, including from July 6 to 11, 2008 and on July 14, 2008, *see* PX56-61, and between August 3, 2008 and September 26, 2008, *see* PX62-102. Specifically, during the latter dates, Meridian reported that the site experienced forty-seven days of flooding out of fifty-four. As a partial result of these weather delays, the Corps executed additional modifications to the construction plan, including modification R12 on September 4, 2008, *see* JX127, modification R16 on September 9, 2008, *see* JX131, and modification R13 on September 12, 2008, *see* JX128, which extended the construction calendar collectively by thirty-three days. Subsequently, on September 15, 2008, the Corps and Meridian executed bilateral modification R17, which addressed cost increases and schedule delays due to the late delivery of the survey files to Meridian. *See* JX132. Just as in modification R8, all of these modifications included the same mutual release of liability. *See, e.g.*, JX132 at 2.

Progress continued on the project in the months following, with, again, further modifications extending the project's scheduled completion. *See, e.g.*, JX135 (extending the schedule by five calendar days as of March 13, 2009 to account for weather delays from late 2008). Due to the delays and structural failures, however, the Corps ultimately terminated the project in September 2009 following a final inspection. *See* JX49 at 12-14.

---

[4]The Modifications were referred to by the parties and in the documentation with various labels, e.g., "R3," "R-3," and R0003. For ease, the court will refer to all modifications by eliminating extraneous dashes and zeroes, *e.g.*, "R3."

Multiple disputes between the parties over costs remained.  On August 24, 2009, Meridian submitted a final payment request to the Corps, which was eventually rejected. *See* DX572.  With these disputes still outstanding, the Corps circulated internally, but never issued, a draft modification R33 that would have responded to Meridian's requests for equitable adjustments ("REA") regarding flood events during the 2008 monsoon season as well as sub-surface water flows. PX377 at 3.  The draft specifically noted that, "subsurface water is an unpredictable element which led to delays giving partial merit to the flood REA by causing the contractor to be working on the channel in the early monsoon events." PX377 at 8.  At the time, Meridian was unaware of this draft modification.  *See Meridian I*, 122 Fed. Cl. at 411.  With no resolution of its claims, Meridian then submitted a Consolidated Request for Equitable Adjustment ("consolidated REA") to the Corps on April 2, 2010 which contained fourteen counts of requests for equitable adjustment. JX177 at 1.  The fourth count ("REA 4") was a claim for $899,600.88 for "flood events." JX17 at 17.  On May 20, 2010, the Corps acknowledged receipt of the consolidated REA and stated its intent to issue a decision by November 30, 2010. JX189.  After no decision was rendered, Meridian converted the consolidated REA into a certified claim on January 7, 2011.  JX33 at 1.

Again, no decision was issued by the Corps, and Meridian brought suit in this court alleging a right to relief under the CDA.  In *Meridian I*, the court concluded that Meridian's claim was deemed denied on March 7, 2011.  *Meridian I*, 122 Fed. Cl. at 399; *see* 41 U.S.C. § 7103(f)(5).  All fourteen counts were considered by the court in *Meridian I*, with the court ruling that "the [Corps] did not breach the September 21, 2007 Contract, as alleged in Counts 1-6 and 10-13 of the May 19, 2014 Second Amended Complaint, or the implied duty of good faith and fair dealing, as alleged in Count 14 . . . ." 122 Fed. Cl. at 426.  Counts 7-9 remained at issue until *Meridian II*,[5] where the court found that Meridian was entitled to an equitable adjustment of $983,771.10, plus interest accruing from January 7, 2014 until date of payment. 130 Fed. Cl. at 172.

Meridian subsequently appealed this decision to the Federal Circuit in *Meridian III*. 885 F.3d 1351.  On appeal, Meridian pursued its claims against the government on all fourteen counts, and, additionally, it contended that the accrual date for interest as found in *Meridian II* was incorrect.  *See id.* at 1353-54.  The government conceded liability for Counts 7-9, *see id.* at 1354, and both parties agreed that the proper starting date for interest accrual should be January 7, 2011, *see id.* at 1354 n.2.[6]  As to Counts 1-6 and 10-14, the Federal Circuit vacated and remanded the decision of the court in *Meridian I* for Counts 4 and 6, and affirmed the dismissal of the other Counts from the *Meridian I* decision.  *See id.* at 1367.  Because the parties have reached a settlement as to Count 6, and that Count has been dismissed, *see supra*, at 2 n.1, only Count 4 remains in dispute on remand.

Regarding Count 4 concerning flood events, the Federal Circuit concluded that the court's analysis in *Meridian I* was insufficient. *Id.* at 1362.  In *Meridian I*, the court had ruled

---

[5]Count 7 concerned "Suspension of work," Count 8 related to "Channel Fill," and Count 9 was based on "Interest Protection."  *See Meridian III*, 885 F.3d at 1354.

[6]The court today adjusts the proper interest accrual date.  *See infra*, at 9.

that Meridian's claim was barred by the defense of accord and satisfaction due to the releases present in both modification R8 and modification R17. 122 Fed. Cl. at 411-12. Meridian had argued that the parties continued to consider the flood-damage claim despite the releases, such that there was no meeting of the minds between the parties as required for accord and satisfaction. *Id*. at 412. In support of this contention, Meridian argued that the draft modification R33 included the Corps' estimate of money owed by the Corps to Meridian for flood damage. *Id.* Nonetheless, the court had concluded in *Meridian I* that because Meridian was unaware of the draft modification R33 prior to discovery, the releases in R8 and R17 were effective to preclude the claim. *Id.*

In vacating and remanding that decision, the Federal Circuit clarified on appeal that the standard for acceptance *vel non* of a claim when presented with an accord and satisfaction defense does not require evidence of proposed modifications negotiated between the parties. *Meridian III*, 885 F.3d at 1364. Instead, as the court noted, "Our precedent on the meeting of the minds inquiry accepts a wide range of evidence in its fact-specific consideration" of meeting of the minds, *id*. at 1365, and particularly that it was necessary to take into account "additional evidence on record showing that the [g]overnment directed Meridian to submit revised estimates for the flood claim on multiple occasions after the execution of the bilateral modifications [that contained the releases]," *id*. at 1364. The court of appeals also questioned whether the "subject matter" of the releases applied to the flood-damage claim, *i.e.,* whether "the subject matter of the modification [and attendant release] is the same as that of the disputed claim." *Id*. at 1364 n.12. Consequently, the court ordered that "[o]n remand, the Court of Federal Claims shall consider meeting of the minds and proper subject matter." *Id*.

## STANDARDS FOR DECISION

Accord and satisfaction refers to the "discharge [of a claim] by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction of his claim." *Brock & Blevins Co. v. United States*, 343 F.2d 951, 955 (Ct. Cl. 1965) (quoting 6 Corbin, *Contracts* § 1276 (1962)). To establish the affirmative defense of accord and satisfaction, four elements must be present: "(1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration." *Holland v. United States*, 621 F.3d 1366, 1382 (Fed. Cir. 2010) (citing *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002)); *see also Sikorsky Aircraft Corp. v. United States*, 105 Fed. Cl. 657, 674 (2012).

## ANALYSIS

### I.  Count 4: Flood Event Liability

The court is first charged on remand with determining whether the government is liable to Meridian for flood-event damages suffered during the 2008 monsoon season. Meridian argues that it is entitled to recover damages in connection with the flood events in a total of $921,620.69, plus interest. Pl.'s Br. on Remand ("Pl.'s Br.") at 16, ECF No. 157. In opposition, the government asserts that this claim should be barred under the defense of accord and satisfaction, or alternatively, that the contract assigned the risk of flooding to Meridian. Def.'s

Resp. to Pl.'s Br. on Remand ("Def.'s Opp'n") at 18, 31, ECF No. 172. Because the court concludes that the government's arguments of accord and satisfaction and assignment of risk are unconvincing, the court finds the government liable for flood-event damages under Count 4.

### A.   Accord and Satisfaction

Two of the necessary elements for accord and satisfaction are in dispute in this case: (1) what the proper subject matter of the releases are; and (2) whether the parties came to a meeting of the minds on the scope of the releases.  After addressing the issue of the proper subject matter of the releases in modification R8 and modification R17, the court will examine whether the parties came to a meeting of the minds that the releases set out in those modifications "constituted full and complete satisfaction of all obligations and liabilities," *Holland*, 621 F.3d at 1383, for all flood-events claims.

#### 1.   *Proper subject matter.*

At issue is whether the release language from modifications R8 and R17 encompasses Meridian's claims for flood-event damages.  Both modification R8, dated June 5, 2008, and modification R17, dated September 15, 2008, contain the same mutual release of liability.  The specific text is:

> It is understood and agreed that pursuant to the above, the contract time is extended the number of calendar days stated, and the contract price is increased as indicated above, which reflects all credits due the Government and all debits due the Contractor. It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its Subcontractors and Suppliers for all costs and markups directly or indirectly attributable for the change ordered, for all delays related thereto, for all extended overhead costs, and for performance of the change within the time frame stated.

JX123 at 2; JX132 at 2.  Modification R8 was specifically described as "a definitization of modification R00006," JX123 at 2, which had added the new access ramp, while modification R17 addressed "delay as it pertains to project drawings and survey issues," JX132 at 2.

Meridian argues that each of these releases speaks only to specific costs associated with the explicit purposes listed in the modifications, that is, the costs of the new access ramp and the survey drawing delays.  *See* Pl.'s Br. at 22.  The government, on the other hand, suggests a broader reading of the release language that would include the release of all flood-event damage claims, past and future, arguing that these are encompassed within the related-costs language of the release.  *See* Def.'s Opp'n at 25-26.  The court agrees with Meridian.

While the release language specifies release for "all costs and markups directly or indirectly attributable for the change ordered" and "for all delays related thereto," *see* JX123 at 2; JX132 at 2, flood-event damage claims arising in the future are simply too attenuated from the access ramp and survey delays to be within the subject matter of these releases. Notably, the

execution dates of both of the modifications, but particularly that of R8, pre-date a significant portion of the days when the site experienced flooding. *See id.*; *see also* PX62-102 (noting significant flooding at the work site between August 3, 2008 and September 26, 2008); Hr'g Tr. 10:4-7 (Sept. 4, 2019) ("There were approximately 14 flood events during that monsoon season of 2008 and they occurred between June 27th and December 19th of 2008."). The releases do not explicitly cover flood damage that had not yet occurred and whose scope was not predicted.

In support of its position, the government argues that the flood-event damage was suffered as at least an indirect result of the delays incurred from these modifications, R8 and R17, because these delays forced Meridian to work during the area's extended monsoon season, the ultimate cause of the site's flooding. Def.'s Opp'n at 27. This argument, however, is unconvincing. The project's overall progress in 2008 was slowed as a result of numerous causes, including additional modifications to the scope of the work and differing site conditions such as sub-surface water flows and softer-than-anticipated soils. Thus, no accurate line of causation can be drawn between the two causes of delay at issue here, the definitization of the new access ramp and the survey delays, and the several other incidents and modifications which delayed the project and pushed completion of the crucial channel invert work into monsoon season.

The facts at hand can also be distinguished from those of the cases the government uses to support its broad reading of the release language at issue. For example, in *King Fisher Marine Serv., Inc. v. United States*, 16 Cl. Ct. 231 (1989), while the court did find that the release language barred all claims arising from a FO-2 change order, ultimately, the court limited its reading of the language by applying the notion that "King Fisher's entire claim is based on the FO-2 change order." *Id.* at 237. Here, unlike in *King Fisher*, the claim for flood-event damages is *not* obviously within the purview of either the ramp access or the survey delays specifically addressed by the modifications. Contrastingly, as with *King Fisher*, in *John Massman Contracting Co. v. United States*, 23 Cl. Ct. 24 (1991), the claims brought by the plaintiff were for compensation resulting from schedule extensions due to modifications that included release language similar to that at issue here, *see id.* at 28, but the money sought by Massman was for delays and damages that were explicitly encompassed by the subject matter of the modifications. For example, Massman sought damages and costs from *high river flows*; modification P10, which contained the release language, "granted plaintiff a 295 calendar day extension because of *high river flows.*" *Id.* at 27-28 (emphasis added). Again, modifications R8 and R17 related to an access ramp and survey delays, not flood-event damages. Accordingly, the connection between the claim and the explicit subject of the release does not correlate as it did in *King Fisher* and *Massman*.

> 2. *Meeting of the minds*.

Although the court today finds that flood-event damages are not encompassed within the subject matter of the R8 and R17 releases, the court also concludes that the defense of accord and satisfaction is barred here because it finds there was no meeting of the minds between the parties as to the flood-event damages claim. As explained by the Federal Circuit in *Community Heating*, "[C]ourts may refuse to bar a claim based upon the defense of accord and satisfaction where the parties continue to consider the claim after execution of a release" because this conduct is evidence that there was no meeting of the minds between the parties that the release

language would constitute an abandonment of the plaintiff's earlier claim. *See Community Heating & Plumbing Co., Inc. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993) (citing *Winn-Senter Constr. Co. v. United States*, 75 F. Supp. 255 (Ct. Cl. 1948)). Ultimately, the court concludes today that there was no meeting of the minds here because the flood-event damages claim continued to be negotiated after the releases were issued, as evidenced by draft modification R33, the government's request for and Meridian's subsequent submission of an REA including a claim for flood events, and the government's subsequent consideration of that REA. *See, e.g.*, *Community Heating*, 987 F.2d at 1581 (emphasizing that the Navy continued to negotiate and audit the claims thereby barring an accord and satisfaction defense); *A & K Plumbing & Mech., Inc. v. United States*, 1 Cl. Ct. 716, 723 (1983), *aff'd*, 795 F.2d 1011 (Fed. Cir. 1986) (concluding that each party's consideration of the merits of the claim required that the release not be construed as a bar to plaintiff's claim).

In this case, there is evidence that both parties considered the merits of the flood-event damages claim after the execution of modifications R8 and R17. Following the execution of the modifications, in June and September 2008 respectively, Meridian sent a letter to the Corps requesting equitable compensation for flood-event damage. *See* PX377 at 7 (referencing an REA sent on December 22, 2008 regarding flood damage on site). The Corps responded to this REA with a letter, dated January 22, 2009, finding that after an initial consideration on the merits, it found no merit. Def.'s Opp'n, Ex. B at 1. Meridian, still seeking final resolution on its flood-events REA in addition to others, filed a consolidated REA on April 2, 2010, *see* JX177, with the Corps, responding to their request to do so, *id.*; *see also* Hr'g Tr. 857:18-858:12 (Jan. 29, 2014). In August 2010, the Corps internally circulated draft modification R33, which noted that the Corps' initial response to the flood REA came with "a request for additional information" from Meridian, and noted that the flood REA now garnered "partial merit." P377 at 7-8. While this modification was never issued, and although Meridian did not learn of this document until discovery was had in this case, the draft of this document and its internal circulation are enough to show continued consideration by the Corps of Meridian's claim.

Further in support of this conclusion, the Corps responded to the consolidated REA, which contained the renewed REA for flood events, with a letter on May 20, 2010, acknowledging the receipt of the REAs and committing to issue a final decision by November 30, 2010 on the claims. *See* JX189. The record, therefore, contains sufficient evidence that there was no "intent on the part of either party that the release[s] ha[d] [the] effect" of barring the plaintiff's claims. *A & K Plumbing*, 1 Cl. Ct. at 723.

## II. Assumption of Risk

The government alternatively suggests that that Meridian's claim for flood-event damages fails because the contract assigned the risk of flooding on the site to Meridian. Def.'s Opp'n at 31. This argument is attended by irony—in one sense, the government seeks to suggest that the flood-events damage directly resulted from the delays caused by modifications R8 and R17 (thus seeking to put them within the release language), and yet also suggests that the flood damage from monsoon season was the sheer result of poor planning on Meridian's part. *See* Def.'s Opp'n at 31-34 ("Meridian's flood[-]event damages claim also fails because Meridian chose to work in the river channel during monsoon season."). The government's argument is

unavailing. Meridian's initial construction schedule planned for a completion of the channel invert work, a necessary step in protecting the site from flooding, to be completed by late June 2008. *See* Pl.'s Br. at 16-17; Hr'g Tr. 8:3-7 (Sept. 4, 2019). As previously noted, many issues arose in the project's early stages that led to cumulative substantial delay, including those caused by the government's failure timely to provide the survey files. These delays, in turn, pushed the channel invert work's completion well into monsoon season. The government cannot now claim that Meridian assumed the risk of flooding from monsoon season when the government was largely responsible for Meridian's inability to complete the project prior to the beginning of monsoon season. *See, e.g.*, *Merritt-Chapman & Scott Corp. v. United States*, 528 F.2d 1392, 1398-99 (Ct. Cl. 1976) (finding that government-caused delays which pushed the contractor to work during heavy rainfall were compensable). Simply put, the government cannot escape liability for flood damages when the government is responsible for causing the contractor to be working during the flood-prone season.

### III. Count 4: Flood-Event Damages

Because the court concluded in *Meridian I* that the government was not liable to Meridian for flood-event damages, *see* 122 Fed. Cl. at 412, the court never addressed the issue of damages for Count 4 in *Meridian II*, *see* 130 Fed. Cl. at 172. The court today finds the government liable for flood-event damages under Count 4. Therefore, the court must determine the proper amount due.

Meridian, on remand, sought damages in the amount of $921,620.69, plus interest. Pl.'s Br. at 16. The government disputed $48,017 of this sum, arguing for damages in the amount of $873,603.69, plus interest. *See* Joint Stipulations of Fact ("Joint Stip.") at 85, ECF No. 141. Meridian has now conceded and agrees to the government damages calculation of $873,603.69, plus interest. Hr'g Tr. 58:16-25; 59:9-15 (Sept. 4, 2019). Therefore, the court finds that Meridian is entitled to damages for flood events under Count 4 in that amount.

### IV. Interest Calculation: Counts 4, 7-9

On remand, this court has also been charged with recalculating the damages based on the proper interest accrual starting date. *Meridian III*, 885 F.3d at 1354 n.2. This interest must be re-calculated with regard to Counts 7-9 in accordance with the damages awarded in *Meridian II*, and calculated now for the first time with regard to Count 4.

Under 28 U.S.C. § 2516(a), Meridian is entitled to interest on both of its claims. Pursuant to 41 U.S.C. § 7109(b), "[i]nterest shall accrue and be paid at a rate which the Secretary of the Treasury shall specify as applicable for each successive 6-month period." As noted in *Meridian III*, the proper interest accrual start date is January 7, 2011, 885 F.3d at 1354 n.2, not January 7, 2014 as originally stated in *Meridian II*, 130 Fed. Cl. at 171. The applicable interest rates, as determined by the Secretary of the Treasury for the periods at issue are as follows:

(1) January 7, 2011-June 30, 2011: 2.625%. 75 Fed. Reg. 82,146 (Dec. 29, 2010).

(2) July 1, 2011-December 31, 2011: 2.5%. 76 Fed. Reg. 38,742-43 (July 1, 2011).

(3) January 1, 2012-June 30, 2012: 2.0%. 76 Fed. Reg. 82,350 (Dec. 30, 2011).

(4) July 1, 2012-December 31, 2012: 1.75%. 77 Fed. Reg. 38,888 (June 29, 2012).

(5) January 1, 2013-June 30, 2013: 1.375%. 77 Fed. Reg. 76,624 (Dec. 28, 2012).

(6) July 1, 2013-December 31, 2013: 1.75%. 78 Fed. Reg. 39,063 (June 28, 2013).

(7) January 1, 2014-June 30, 2014: 2.125%. 79 Fed. Reg. 424 (Jan. 3, 2014).

(8) July 1, 2014-December 31, 2014: 2.0%. 79 Fed. Reg. 37,391 (July 1, 2014).

(9) January 1, 2015-June 30, 2015: 2.125%. 79 Fed. Reg. 78,950-51 (Dec. 31, 2014).

(10) July 1, 2015-December 31, 2015: 2.375%. 80 Fed. Reg. 39,482-83 (Jan. 9, 2015).

(11) January 1, 2016-June 30, 2016: 2.5%. 80 Fed. Reg. 81,880 (Dec. 31, 2015).

(12) July 1, 2016-December 31, 2016: 1.875%. 81 Fed. Reg. 44,088 (July 6, 2016).

(13) January 1, 2017-June 30, 2017: 2.5%. 82 Fed. Reg. 910 (Jan. 4, 2017).

(14) July 1, 2017-December 31, 2017: 2.375%. 82 Fed. Reg. 34,348 (July 24, 2017).

(15) January 1, 2018-June 30, 2018: 2.625%. 83 Fed. Reg. 3,052 (Jan. 22, 2018).

(16) July 1, 2018-December 31, 2018: 3.5%. 83 Fed. Reg. 47,970 (Sept. 21, 2018).

(17) January 1, 2019-June 30, 2019: 3.625%. Bureau of the Fiscal Serv., *Interest Rates*, Prompt Payment, https://www.fiscal.treasury.gov/prompt-payment/rates.html (last visited Sept. 16, 2019).

(18) July 1, 2019-September 19, 2019: 2.625%. Bureau of the Fiscal Serv., *Interest Rates*, Prompt Payment, https://www.fiscal.treasury.gov/prompt-payment/rates.html (last visited Sept. 16, 2019).

Further interest will be due at the rate specified by the Treasury until the judgment has been paid.

Meridian was awarded pre-interest damages of $983,771.10 in *Meridian II*, 130 Fed. Cl. at 171, and has today been awarded pre-interest damages of $873,603.69, for a total of $1,857,374.79. Meridian is entitled to simple interest on this total amount. 42 C.F.R. § 52.233-1(h). Simple interest is calculated with the formula I=Prt, where "I" is the interest, "P" is the principal, "r" is the interest rate, and "t" is the unit of time. As of September 19, 2019, the government owes a total of $377,982.13 in interest. The following table contains a more detailed calculation:

| Period Start Date | Period End Date | Principal | Interest Rate (%) | Time (in days) | Amount of Interest |
|---|---|---|---|---|---|
| January 7, 2011 | June 30, 2011 | $1,857,374.79 | 2.625 | 175 | $23,376.21 |
| July 1, 2011 | December 31, 2011 | $1,857,374.79 | 2.500 | 184 | $23,408.01 |
| January 1, 2012 | June 30, 2012 | $1,857,374.79 | 2.000 | 182 | $18,522.86 |
| July 1, 2012 | December 31, 2012 | $1,857,374.79 | 1.750 | 184 | $16,385.61 |
| January 1, 2013 | June 30, 2013 | $1,857,374.79 | 1.375 | 181 | $12,664.50 |
| July 1, 2013 | December 31, 2013 | $1,857,374.79 | 1.750 | 184 | $16,385.61 |
| January 1, 2014 | June 30, 2014 | $1,857,374.79 | 2.125 | 181 | $19,572.40 |
| July 1, 2014 | December 31, 2014 | $1,857,374.79 | 2.000 | 184 | $18,726.41 |
| January 1, 2015 | June 30, 2015 | $1,857,374.79 | 2.125 | 181 | $19,572.40 |
| July 1, 2015 | December 31, 2015 | $1,857,374.79 | 2.375 | 184 | $22,237.61 |
| January 1, 2016 | June 30, 2016 | $1,857,374.79 | 2.500 | 182 | $23,153.58 |
| July 1, 2016 | December 31, 2016 | $1,857,374.79 | 1.875 | 184 | $17,556.01 |
| January 1, 2017 | June 30, 2017 | $1,857,374.79 | 2.500 | 181 | $23,026.36 |
| July 1, 2017 | December 31, 2017 | $1,857,374.79 | 2.375 | 184 | $22,237.61 |
| January 1, 2018 | June 30, 2018 | $1,857,374.79 | 2.625 | 181 | $24,177.68 |
| July 1, 2018 | December 31, 2018 | $1,857,374.79 | 3.500 | 184 | $32,771.22 |
| January 1, 2019 | June 30, 2019 | $1,857,374.79 | 3.625 | 181 | $33,388.22 |
| July 1, 2019 | September 19, 2019 | $1,857,374.79 | 2.625 | 81 | $10,819.84 |
| | | | | TOTAL: | $377,982.13 |

## CONCLUSION

For the reasons stated, the court finds the government liable to Meridian for Count 4, flood-event damages.  Pursuant to *Meridian III*, the government is also liable for Count 7, suspension of work, Count 8, channel fill, and Count 9, interest protection.  *See* 885 F.3d at 1354. Meridian is entitled to damages in the amount of $873,603.69 for Count 4 and $983,771.10 for Counts 7-9, totaling to damages in the amount of $1,857,374.79, plus interest, pursuant to 41 U.S.C. § 7109(b).  Interest will accrue from January 7, 2011 until the date of payment. As of September 19, 2019, the government owed Meridian $377,982.13 in interest. The clerk is directed to enter final judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge